McCLENDON, J.
*41 The State of Louisiana appeals a judgment that sustained peremptory exceptions raising the objections of no cause of action and no right of action in favor of a drug manufacturer, dismissing the State's claims against the manufacturer with prejudice. For the reasons that follow, we reverse.
FACTS AND PROCEDURAL HISTORY
The State of Louisiana, by and through its Attorney General, filed the instant suit against AstraZeneca AB, AstraZeneca LP, AstraZeneca Pharmaceuticals LP, and Aktiebolaget Hassle (collectively "AstraZeneca") on March 18, 2015. The State alleges that AstraZeneca intentionally delayed approval of a generic equivalent to their brand pharmaceutical product Toprol-XL® in an effort to limit competition from generic pharmaceutical manufacturers and in violation of state law.[1] As a result of a generic being delayed, the State alleges that it, through the Louisiana Medicaid program, paid more in reimbursement for Toprol-XL than it otherwise would have paid for the generic equivalent. The State also claims that it lost substantial amounts in reimbursements paid outside of the Medicaid program. In its lawsuit, the State asserts that its claims arise from antitrust violations under the Louisiana Monopolies Act ("Monopolies Act"), LSA-R.S. 51:121, et seq. , and from violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), LSA-R.S. 51:1401, et seq. Alternatively, the State asserts that it has a claim for unjust enrichment. It seeks restitution, treble damages, attorney fees, and costs.
In response, AstraZeneca filed multiple exceptions, including the ones at issue herein-the peremptory exceptions raising the objections of no right of action and no cause of action. Following argument on AstraZeneca's exceptions, the trial court found that all claims were vested with the Department of Health and Hospitals (now Louisiana Department of Health or "LDH") rather than the State. No evidence was introduced at the hearing. Because the trial court found that all claims were vested with LDH, it sustained the exceptions of no right of action and no cause of action and dismissed the State's claims with prejudice.
The State has appealed, assigning the following as error:
1. The trial court erred in sustaining Defendants' Exceptions of No Right of Action and No Cause of Action in this suit, based upon its finding that the State of Louisiana is not the proper party in interest to bring the suit and/or that the Louisiana Department of Health has the sole right to assert these claims.
2. The Trial Court erred in sustaining Defendants' Exceptions of No Right of Action and No Cause of Action in this suit, based upon its finding that the State of Louisiana's role as an indirect purchaser of Toprol-XL bars the State from pursuing antitrust claims and LUTPA claims.
*42 3. The Trial Court erred in sustaining Defendants' Exceptions of No Right of Action and No Cause of Action in this suit by dismissing the State's claims that are not derived from Medicaid expenditures.
4. The Trial Court erred in sustaining Defendants' Exceptions of No Right of Action and No Cause of Action in this suit by dismissing the State's unjust enrichment claim.
DISCUSSION
At issue in this case are the exceptions of no right of action and no cause of action. Although these two exceptions are often confused, the peremptory exceptions of no right of action and no cause of action are separate and distinct. LSA-C.C.P. art. 927(A)(5) and (6) ; Badeaux v. Southwest Computer Bureau, Inc., 05-0612 (La. 3/17/06), 929 So.2d 1211, 1216. The Louisiana Supreme Court has recognized that one of the primary differences between the exception of no right of action and no cause of action lies in the fact that the focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit, while the focus in an exception of no cause of action is on whether the law provides a remedy against the particular defendant. Badeaux, 929 So.2d at 1216-17.
An exception of no cause of action questions whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition and is triable on the face of the petition. Badeaux, 929 So.2d at 1217. To determine the issues raised by the exception of no cause of action, each well-pleaded fact in the petition must be accepted as true. Id. In reviewing a district court's ruling sustaining an exception of no cause of action, appellate courts conduct a de novo review because the exception raises a question of law, and the district court's decision is based only on the sufficiency of the petition. Id. An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim that would entitle him to relief. Id. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. Id. If the petition states a cause of action on any ground or portion of the demand, the exception should generally be overruled. Id.
Further, the Louisiana Supreme Court has held that the exception of no cause of action should not be maintained in part, so as to prevent a multiplicity of appeals thereby forcing an appellate court to consider the merits of the action in a piecemeal fashion. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1236 (La. 1993). If there are two or more items of damages or theories of recovery that arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss an item of damages or theory of recovery. Id. at 1239.
As to the exception of no right of action, the function of the exception is a determination of whether plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition. LSA-C.C.P. art. 927(A)(6) ; Badeaux, 929 So.2d at 1217. In examining an exception of no right of action, a court should focus on whether the particular plaintiff has a right to bring the suit, but assume that the petition states a valid cause of action for some person. Turner v. Busby, 03-3444 (La. 9/9/04), 883 So.2d 412, 415. Evidence supporting or controverting *43 an exception of no right of action is admissible; however, in the absence of evidence to the contrary, the averments of fact in the pleadings will be taken as true. See Eagle Pipe and Supply, Inc. v. Amerada Hess Corporation, 10-2267, 10-2272, 10-2275, 10-2279, 10-2289 (La. 10/25/11), 79 So.3d 246, 252-53 & 255. Determination of whether a plaintiff has a right of action is a question of law. 1900 Highway 190, L.L.C. v. City of Slidell, 15-1755 (La.App. 1 Cir. 6/3/16), 196 So.3d 693, 698 (citing Horrell v. Horrell, 99-1093 (La.App. 1 Cir. 10/6/00), 808 So.2d 363, 368, writ denied, 01-2546 (La. 12/7/01), 803 So.2d 971 ).
Additionally, courts have treated a partial exception of no right of action no differently than a partial exception of no cause of action. This court has previously held that the Code of Civil Procedure does not provide for a partial peremptory exception raising the objection of no right of action, and, thus, if a plaintiff has a right of action as to any one of the theories or demands for relief set out in his petition, the objection of no right of action should be overruled. Talbot v. C&C Millworks, Inc., 97-1489 (La.App. 1 Cir. 6/29/98), 715 So.2d 153, 156 (citing Clement v. McNabb, 580 So.2d 981, 983 (La.App. 1 Cir. 1991) and Cenac Towing Co. v. Cenac, 413 So.2d 1351, 1352 (La.App. 1 Cir. 1982) ). Where the plaintiff pleads multiple theories of recovery based on a single occurrence or set of operative facts, the partial grant of an exception of no right of action, which attacks only one theory of recovery and which does not dismiss a party, would be invalid as an impermissible partial judgment. Talbot, 715 So.2d at 156 (citing Shinew v. Luciano Refrigerated Transport, Inc., 96-2454 (La.App. 1 Cir. 11/19/97), 706 So.2d 140, 142 and Poy v. Twin Oaks Nursing Home, Inc., 95-889 (La.App. 5th Cir. 2/14/96), 671 So.2d 15, 18-19.
In light of these axioms, we first consider whether the Attorney General has a right of action to bring the proceeding at issue. In connection with its exception raising the objection of no right of action, AstraZeneca maintains that LDH, as opposed to the State, is the only party that has a right of action. AstraZeneca avers that the Louisiana Supreme Court has recognized: (1) state agencies with the power to "sue and be sued" as "the sole parties capable of bringing suit to enforce their rights" and (2) that lawsuits concerning the duties of such agencies should be instituted by the agency and not by the state. See State ex rel. Dep't of Highways v. City of Pineville, 403 So.2d 49, 52 (La. 1981). AstraZeneca notes that LDH is "a body corporate with the power to sue and be sued," and contends that LDH is statutorily vested with responsibility for Medicaid. LSA-R.S. 36:251A and 36:254D(1)(a)(i). Further, AstraZeneca asserts that LDH is the owner of the funds used to reimburse pharmacies for the purchase of Toprol-XL. See LSA-R.S. 46:153.3. Nevertheless, AstraZeneca maintains that even if the funds could be classified as belonging to the State, any action against it would belong to LDH under the rationale of City of Pineville.
On the other hand, while the State recognizes that LDH is a body corporate with the power to sue and be sued, the State maintains that it is not asserting any right that was ever solely possessed by LDH. The State avers that under the rationale of Pineville, the political subdivision becomes the sole party capable of asserting a claim only when the claim asserted derives from property owned (or a contract entered into) exclusively by that political subdivision or agency. The State argues that while LDH administers the Medicaid program, all Medicaid funds belong to the State. The State claims that all of the funds paid through the Medicaid *44 program come from the State's general fund and from federal funds granted the State on which the State remains obligated-funds which were never a part of LDH's budget and never the distinct property of LDH. The State additionally alleges that there were non-Medicaid funds that were also paid out by the State. As such, the State maintains that it has a right to bring this action in its own name stemming from its ownership of those funds.
Recently, this court addressed a similar issue in State v. Abbott Laboratories, Inc., 15-1854, 15-1626 (La.App. 1 Cir. 10/21/16), 208 So.3d 384, writs denied, 17-0125, 17-0149 (La. 3/13/17), 216 So.3d 802, 808, wherein the State sued pharmaceutical manufacturers alleging that the manufacturers "engaged in an unlawful and deceptive scheme to receive Medicaid payments for drugs that were not eligible for Medicaid payments." The State raised claims under LUTPA and the Louisiana Medical Assistance Programs Integrity Law (MAPIL), LSA-R.S. 46:437.1, et seq. , along with claims for fraud, negligent misrepresentation, redhibition, and unjust enrichment. Id. at 386-87. In response, the manufacturers filed an exception of no right of action, asserting that the right of action belonged to the Louisiana Department of Health and Hospitals (now LDH). The trial court sustained the manufacturers' exception of no right of action and dismissed the suit. The State then appealed. Id. at 387.
On appeal, this court noted that LDH was a political subdivision that had the right to sue and be sued, and that the LDH was statutorily authorized to file suit on behalf of Medicaid. LSA-R.S. 36:254D(2)(H). Abbott, 208 So.3d at 388. Nonetheless, this court recognized the extensive powers granted the Attorney General on behalf of the State to "institute and prosecute any and all suits he may deem necessary for the protection of the interests and rights of the state." See LSA-R.S. 13:5036. We also recognized the specific powers granted the Attorney General in the area of consumer protection under LUTPA. See LSA-R.S. 51:1404.[2]
*45 Abbott, 208 So.3d at 388-89. With regard to the LUTPA claim, this court cited the following provisions of the act: Louisiana Revised Statutes 51:1405 provides, in part:
A. Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
Louisiana Revised Statutes 51:1407 provides, in part:
A. Whenever the attorney general has reason to believe that any person is using, has used, or is about to use any method, act, or practice declared by R.S. 51:1405 to be unlawful, he may bring an action for injunctive relief in the name of the state against such person to restrain and enjoin the use of such method, act, or practice....
B. In addition to the remedies provided herein, the attorney general may request and the court may impose a civil penalty against any person found by the court to have engaged in any method, act, or practice in Louisiana declared to be unlawful under this Chapter. In the event the court finds the method, act, or practice to have been entered into with the intent to defraud, the court has the authority to impose a penalty not to exceed five thousand dollars for each violation.
Louisiana Revised Statutes 51:1408 provides, in part:
A. The court may issue such additional orders or render judgments against any party, as may be necessary to compensate any aggrieved person for any property, movable or immovable, corporeal or incorporeal, which may have been acquired from such person by means of any method, act, or practice declared unlawful by R.S. 51:1405, whichever may be applicable to that party under R.S. 51:1418. Such orders shall include but not be limited to the following:
(1) Revocation, forfeiture, or suspension of any license, charter, franchise, certificate, or other evidence of authority of any person to do business in the state.
(2) Appointment of a receiver.
(3) Dissolution of domestic corporations or associations.
(4) Suspension or termination of the right of foreign corporations or associations to do business in this state.
(5) Restitution.
B. Unless otherwise expressly provided, the remedies or penalties provided by this Chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state.
Louisiana Revised Statutes 51:1416 provides:
In addition to remedies for contempt of court otherwise provided by law, any person who violates the terms of an injunction issued under R.S. 51:1407 or 1408, or an assurance of voluntary compliance as authorized under R.S. 51:1410, may be required to pay to the state treasurer a civil penalty of not more than five thousand dollars per violation. For the purposes of this Section, the district court issuing an injunction shall retain jurisdiction and the attorney general acting in the name of the state may petition for recovery of civil penalties provided in this Section.
Considering the foregoing statutory authority, this court concluded that "LUTPA
*46 expressly gives the Attorney General the right to bring an action for injunctive relief (La. R.S. 51:1407A) and request civil penalties (La. R.S. 51:1407B) and restitution ( La. R.S. 51:1408(5) )." Id. at 389. Accordingly, this court reversed the trial court ruling sustaining the objection of no right of action under LUTPA.
Here, AstraZeneca asserts that the Abbott decision is not controlling because the State, through the Attorney General, has not asserted a claim under MAPIL. However, in Abbott, this court held that the Attorney General has a right of action to maintain a LUTPA claim on behalf of the State for specific purposes, which it has done here. Therefore, the non-existence of a MAPIL claim in this matter does not control our decision.[3] Accordingly, we conclude that the State has a right of action under LUTPA.
Having concluded that the State has a right of action under LUTPA, and given that the claims under LUPTA and the Monopolies Act arise from the same set of operative facts, the exception of no right of action should be overruled. To the extent that Abbott recognizes a partial grant of no right of action when the claims arise from the same set of operative facts, it is overruled. Moreover, given that the State has a specific right under LUTPA, we need not delineate between Medicaid and non-Medicaid expenditures at this time.
Nevertheless, AstraZeneca urges that if the cause of action is vested with LDH, then the Attorney General has no right to pursue the agency's cause of action even if the Attorney General otherwise has a general grant of authority permitting it to do so. We note that substantially similar arguments were asserted by the defendant manufacturers in Abbott, wherein the defendants urged that "the district court correctly recognized that the State cannot pursue claims that, by law, belong to a state agency .... The defendants assert that the State, represented by the Attorney General, purported to bring the action in its own name in order to circumvent the prescriptive periods that would apply if DHH were the plaintiff." Id. at 387. Even so, the Abbott court recognized that the State, by virtue of its statutory authority expressly granted it under LUTPA, has a right to bring claims under LUTPA and to seek limited specified relief, regardless of any right that LDH may possess.
In light of our holding in Abbott, we recognize that the State has a right of action to proceed under the express provisions of LUTPA. In so holding, however, we do not address whether the Medicaid funds belong to LDH or to the State, whether some of the claims belong solely to LDH, what specific relief is available to the State, or whether any claims are prescribed.[4]
*47 AstraZeneca further contends that even if the State has a right of action, it cannot maintain a cause of action as an indirect purchaser[5] of the prescription drug at issue. Although AstraZeneca couches this argument in terms of "no cause," the argument in essence is one of no right. In other words, AstraZeneca asserts that because the State is an indirect purchaser, it has no right to assert claims under LUTPA or the Monopolies Act.
In Illinois Brick Co. v. Illinois, 431 U.S. 720, 728-29, 97 S.Ct. 2061, 2066, 52 L.Ed.2d 707 (1977), the United States Supreme Court held that only a direct purchaser may bring an action under § 4 of the Clayton Act, or the federal antitrust provision (akin to the Louisiana Monopolies Act). Citing a number of policy concerns, the Supreme Court held that indirect purchasers were not entitled to recover. 431 U.S. at 730-35, 97 S.Ct. at 2067-69. In support of its holding, the Supreme Court cited the unique nature of antitrust litigation, issues of multiple recovery, and the problem of allocating damages if indirect purchasers were allowed to bring suit. Id. at 737-38, 97 S.Ct. at 2070-71. Later, the court held that federal antitrust laws do not, however, preempt states from enacting statutes that allow indirect purchasers to recover damages for their injuries. See California v. ARC America Corp., 490 U.S. 93, 101-02, 109 S.Ct. 1661, 1665-66, 104 L.Ed.2d 86 (1989) (rejecting the argument that California's antitrust law, which specifically allows indirect purchaser actions, was preempted by federal law).
Louisiana has no statute that specifically provides a right of action to an indirect purchaser; nor has a Louisiana state court addressed this specific issue.[6] Nonetheless, *48 we need not make a determination of whether we would follow Illinois Brick. Regardless of whether the State is an indirect purchaser or if Louisiana courts would follow the Illinois Brick rationale, the State itself has a right of action under LUTPA, including a specific right of action to seek civil penalties and restitution. On this limited record based solely on the exceptions, we make no determination of whether Louisiana would follow Illinois Brick with regard to the indirect purchaser rule, as we need not decide this issue to determine whether the State has any right of action.
AstraZeneca also maintains that the State has no cause of action as to antitrust claims under the Louisiana Monopolies Act, because the petition alleges activity occurring in interstate commerce. Additionally, AstraZeneca asserts that reading the Monopolies Act claims and LUTPA claims in pari materia, the LUTPA claims sounding in antitrust should likewise be barred where the conduct at issue lacks a specific nexus to Louisiana.[7] However, having found that LUTPA, by its terms, gives the State a cause of action, as well as a right of action, and based on decisions of both the Louisiana Supreme Court and this court that do not recognize partial exceptions of no cause of action, the exception of no cause of action must be overruled.
CONCLUSION
For the foregoing reasons, the trial court's judgment sustaining the exceptions of no right of action and no cause of action, and dismissing the State's claims with prejudice, is reversed. We overrule AstraZeneca's exceptions raising the objections of no right of action and no cause of action. Costs of this appeal are assessed to appellees, AstraZeneca AB, AstraZeneca LP, AstraZeneca Pharmaceuticals LP, and Aktiebolaget Hassle.
REVERSED; EXCEPTIONS OVERRULED.
Welch J. concurs in part and dissents in part with reasons assigned
McDonald, J. concurs for the reasons assigned by Judge Pettigrew
Guidry, J. Concurs in the result.
Pettigrew, J. Concurs with the Results and Assigns Reasons
Holdridge J. concurs of results & assigns reasons.
Chutz, J. Concurs for Reasons assigned by J. Pettigrew
PETTIGREW, J., CONCURS WITH THE RESULTS, AND ASSIGNS REASONS.
*49 I concur with the results reached by the majority, however, I am of the opinion it was not necessary, nor is there any reason, to overrule State v. Abbott Laboratories, Inc., 15-1854, 15-1626 (La.App. 1 Cir. 10/21/16), 208 So.3d 384, writs denied, 17-0125, 17-0149 (La. 3/13/17), 216 So.3d 802, 808. Under the unique facts of Abbott, I am of the opinion it was legally correct.

Toprol-XL is a drug used to treat angina, hypertension, and congestive heart failure. The generic equivalent of Toprol-XL is metoprolol succinate.

Louisiana Revised Statutes 51:1404 provides, in pertinent part:
A. The Louisiana Attorney General's Office, Public Protection Division, Consumer Protection Section shall have the following powers and duties:
(1)(a) To investigate, conduct studies and research, to conduct public or private hearings into commercial and trade practices in the distribution, financing and furnishing of goods and services to or for the use of consumers.
(b) In the furtherance of the above, the attorney general shall notify said seller, distributor, packer, or manufacturer who shall have the right to put on the record any and all pertinent information that may substantiate the commercial or trade practice and shall have the right of cross examination.
(c) Public disclosure shall not be made of any trade secret and commercial or financial information obtained from a person which is of a privileged or confidential nature.
(2) To suggest means of securing adequate consumer representation on public boards and commissions;
(3) To advise the governor and the legislature on matters affecting consumer interests, and to assist in developing executive policies, and to develop, draft and prepare legislative programs to protect the consumer;
(4) To promote consumer education;
....
(6) To do such other acts as are necessary and incidental to the exercise of the powers and functions of the section.
B. The attorney general may receive information and documentary material and may receive and otherwise investigate complaints with respect to acts or practices declared to be unlawful by this Chapter or other laws of this state and inform the public with respect thereto. The attorney general may institute legal proceedings and take such other actions provided for herein or which are necessary or incidental to the exercise of his powers and functions.

Moreover, at oral argument, AstraZeneca posited that the remedies available to the State under LSA-R.S. 51:1407B cannot be sought unless the State pursues injunctive relief in accordance with LSA-R.S. 51:1407A. Having not been briefed, we do not address this issue at this time. See Uniform Rules-Courts of Appeal, Rule 1-3 ("The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.").

Although the facts are distinguishable, we note that a similar argument was addressed in State v. Classic Soft Trim, Inc., 95-804 (La.App. 5 Cir. 10/20/95), 663 So.2d 835, writ denied, 95-2604 (La. 1/26/96), 666 So.2d 669, wherein an action was commenced by the State, through the Attorney General, on behalf of several private parties for violations of LUTPA and the Monopolies Act. The Fifth Circuit noted that under both acts, the Legislature has determined that actions for violations of these laws may be brought by the Attorney General. Id. at 835. The defendants in Classic Soft Trim had filed an exception in the trial court urging a lack of procedural capacity on the part of the State to be a party to the action. The trial court maintained the exception, but the Fifth Circuit reversed, noting that LUTPA and the Monopolies Act (the two acts at issue here) give the Attorney General, on behalf of the State, procedural capacity to bring suits alleging violations of those Acts. Id. at 836. Although the defendants argued that the State's action was a "disguised private action" and that the real parties in interest were the intervenors, the Fifth Circuit held that the State had procedural capacity to proceed, noting:
Here, the legislature has enacted certain regulations concerning commerce in this state and has empowered the Attorney General to enforce those laws both criminally and civilly, and to seek redress against violators on behalf of both the state and private parties. It is not alleged that these enactments are beyond the sovereign power of the state to control commerce within its borders, or that they violate any rights of the defendants which are protected by either the state or the federal constitutions. Absent such allegations, the statutes must be presumed valid and must be given effect by the courts of the state.
Id. at 837. Accordingly, the Fifth Circuit reinstated the State as a proper party to the action, allowing it to proceed with its claims under LUTPA and the Monopolies Act.

Indirect purchasers are individuals who do not deal directly with those engaging in the unfair trade practice or activity. Rather, indirect purchasers are injured when the "costs of illegal activities are passed down the distribution chain." Robert F. Roach, Revitalizing Indirect Purchaser Claims: Antitrust Enforcement Under New York Law, 13 PACE L. REV. 9, 11 (1993).

The Federal Fifth Circuit in Free v. Abbott Laboratories, Inc., 176 F.3d 298, 301 (5th Cir. 1999), aff'd, 529 U.S. 333, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000), believes Louisiana courts would follow the Illinois Brick rationale such that indirect purchasers do not have standing under Louisiana state law. The Louisiana Supreme Court, however, denied certification of the state law question of whether Louisiana antitrust law grants standing to indirect purchasers of consumer products.
Twenty-six states and the District of Columbia have judicially or legislatively "repealed" Illinois Brick and provided standing (or a right of action) to indirect purchasers under antitrust or consumer protection statutes. Newberg on Class Actions, § 20:12 Indirect purchaser standing under state antitrust laws (5th Edition). To guard against the concern first raised in Illinois Brick, many of these states require courts to ensure the defendants are not subject to multiple liability. Six other states have passed partial Illinois Brick repealer statutes. While these states do not permit indirect purchaser suits, they authorize the state attorney general to recover if the state itself is injured as an indirect purchaser or to recover on behalf of an indirect purchaser as parens patriae. Id. In contrast, thirteen states follow Illinois Brick by either completely barring indirect purchaser suits or by providing standing under limited circumstances. Many do so because their antitrust laws are interpreted to be harmonious with federal antitrust law. Id. Five states have not addressed the issue. Id.

AstraZeneca notes that the Monopolies Act generally prohibits "restraint[s] on trade or commerce" in Louisiana. LSA-R.S. 51:122. AstraZeneca avers that by its very terms, the Louisiana Monopolies Act applies only to intrastate commerce and does not reach the conduct alleged in the Petition-the filing of patent applications and the infringement lawsuits, which were instituted in Delaware and Missouri. But see Southern Tool & Supply, Inc. v. Beerman Precision Inc., 01-1749 (La.App. 4 Cir. 5/1/02), 818 So.2d 256, 261, writs denied, 02-1509, 02-1515, 021531 (La. 9/20/02), 825 So.2d 1177, 1178, and 1179. ("Although neither the Louisiana Supreme Court nor this Court have explicitly held that Louisiana's antitrust statutes may apply to matters involving both intrastate and interstate commerce, they have upheld application of Louisiana's antitrust laws in cases where the anti-competitive effects occurred in Louisiana.")