McCLENDON, J.
In this case involving allegations of a defective crane, the plaintiff appeals the trial court's judgment which granted the defendant's exception of prescription as to the plaintiff's redhibition cause of action, pretermitted ruling on the defendant's exception of no cause of action on the plaintiff's remaining claims, and dismissed the plaintiff's petition with prejudice.[1] For the following reasons, we affirm the portion of the judgment that grants the defendant's exception of prescription, reverse the portion of the judgment that dismisses the plaintiff's petition, and remand to the trial court for further proceedings.
*658 FACTS AND PROCEDURAL HISTORY
ExPert Riser Solutions, LLC, supplies marine risers to the oil and gas industry. In December 2012, ExPert entered a contract with Weatherford wherein ExPert agreed to provide dockside facilities and services to Weatherford at Expert's facility in Port Fourchon, Louisiana. ExPert further agreed to have a dedicated crane to support the services outlined in the Weatherford contract. Because it did not have a crane that met the contract's load requirements, ExPert solicited bids from several crane manufacturers, including the defendant, Techcrane International, LLC, to have a new crane constructed.
Techcrane issued a written proposal to ExPert in January 2012 for the production and installation of an API 2C Monogramed Crane Model L300-160 Pedestal Mounted Hydraulic Marine Crane for the price of $1,699,000. As set forth in the proposal, a standard L-300-160 model crane includes a main hoist equipped with an 80-ton traveling block and a maximum lifting weight of 140,000 pounds (70 tons) using a four-part line. According to ExPert, the parties agreed that the crane would be constructed to accommodate an eight-part line with a 150-ton traveling block (purchased separately) which would allow the crane to lift 100 tons. According to the petition, "Expert's operational needs required a crane at its facility that is capable of lifting 100 tons due to the weight of telescopic joints of riser that are routinely handled at the facility." The crane was to be built in accordance with industry requirements and standards, including all welds, and have a minimum design life of 25 years.
ExPert accepted Techcrane's proposal in March 2012 and installation and commissioning began in April 2013. Almost immediately, ExPert began experiencing mechanical and technical problems with the crane, including "popping" noises emanating from the crane's rotating gears and twisted bridle sheaves. Techcrane advised ExPert that the twists in the bridle were normal and explained that the noise was caused by the rotating gears "seating" with each other. Techcrane assured ExPert the noise would subside once the gears were fully "seated."
Soon after installation in 2013, ExPert learned that the crane could not be fitted with an eight-part line and, therefore, could not reach the agreed-upon 100-ton lifting capacity. At the time, Techcrane's service mechanics advised ExPert that the boom tip on the crane was too small and too narrowly designed to accommodate the eight-part reeving. The crane was also damaged during Techcrane's effort to retrofit the crane and, as a result, its lifting rating was reduced to 75 tons.
The mechanical problems with the crane persisted, including hydraulic fluid overheating and leaks, which caused the hydraulic motors, pumps, brakes, and clutches to fail prematurely. As a result of the on-going problems with the crane, and at Expert's request, Southern Crane and Hydraulics, LLC performed an inspection of the crane in October 2013 and provided ExPert with a list of items that required repair and/or further investigation. Significantly, in October 2013, Southern Crane advised ExPert that the pendent line twisting problems and the noise from the rotating gears or bearings needed further investigation. Southern Crane also identified several parts of the crane that were improperly installed and items that were included in Techcrane's proposal but not actually delivered or installed by Techcrane. According to ExPert, it was "unaware that it had been shortchanged by Techcrane until receiving the Southern Crane report."
*659 Problems with the crane continued, resulting in periods of extensive down time and costing ExPert thousands of dollars in maintenance expenses over the next two years. In October 2016, ExPert retained Oil States Skagit Smatco, LLC to perform an inspection and engineering study on the crane to determine whether it was defective. Oil States concluded that the crane was constructed improperly and was unfit for service. Among other things, Oil States identified the roller bearing as the cause of the crane's on-going rotation problems, not "seating" of the rotating gears, and observed signs of defective or damaged welds, some of which were determined to be structural cracks. After the cracks and welds were repaired, the crane was placed back into service, but its capacity was downgraded to light duty operations. Oil States further advised that the crane's rotating bearing needed to be repaired before the crane could be used reliably. However, in lieu of spending $1 million to fix the rotating bearing, ExPert elected to replace the crane in October 2016.
ExPert filed suit against Techcrane on March 20, 2017. The petition specifically identified eight causes of action: breach of contract, redhibition, negligent misrepresentation, fraud/fraudulent inducement, breach of express warranties, tort negligence, and the Louisiana Unfair Trade Practices Act.
In response to Expert's petition, Techcrane asserted exceptions raising the objections of no cause of action and prescription. In its exception of no cause of action, Techcrane argued that Expert's claims were governed by the LPLA and redhibition, and as a result, the exclusivity provisions of the LPLA barred the remaining causes of action asserted by ExPert. In its exception of prescription, Techcrane asserted that Expert's redhibition and LPLA causes of action were prescribed because ExPert was aware of the alleged defects in the crane more than one year before filing suit.
ExPert opposed both exceptions. In response to the exception of no cause of action, ExPert maintained that the LPLA did not apply because its claims were not based on damages caused by Techcrane's products. Accordingly, ExPert argued that its additional theories of recovery were not barred by the LPLA and, instead, may proceed along with a claim for redhibition. With regard to the exception of prescription, ExPert contended that it was not aware that the crane was defective until it received Oil States' report in April 2016. Prior to that time, ExPert believed the crane was a "repair headache" but was unaware of the extent of the defects in the crane.
A hearing on the exceptions took place on October 26, 2017. The trial court granted the exception of prescription, pretermitted consideration of the exception of no cause of action, and dismissed Expert's suit with prejudice. A written judgment was signed on November 10, 2017 and mailed to the parties on November 14, 2017. ExPert timely filed a motion for new trial, seeking clarification from the trial court concerning the disposition of the exception of no cause of action. Because the exception of prescription dismissed only the cause of action for redhibition, ExPert contended that the trial court did not rule on the exception of no cause of action. Therefore, its other causes of action remained viable, and its petition should not have been dismissed. The trial court denied the motion for new trial. ExPert timely filed a motion and order for devolutive appeal, raising two assignments of error:
1. The District Court erred in granting Techcrane's Exception of Prescription as the evidence, taken in the light most favorable to ExPert, *660 shows that ExPert was not aware that the Techcrane crane was not fit for its intended purpose until it received the report from Oil States Skagit Smatco, LLC ("Oil States") on April 13, 2016, reporting that the crane was unfit for its intended use, less than one year prior to the filing of the Petition for Damages on March 20, 2017.
2. The District Court erred in dismissing Expert's Petition for Damages with Prejudice when pretermitting Techcrane's Exception of No Cause of Action as the granting of the Exception of Prescription did not affect the remaining claims for breach of contract, negligence, fraudulent misrepresentation, negligent misrepresentation, fraud, breach of warranty and violation of the Louisiana Unfair Trade Practices Act as these remaining claims were timely filed and remain viable.
DISCUSSION
Because the trial court pretermitted ruling on Techcrane's exception of no cause of action, we begin by addressing the merits of the exception of prescription.
Exception of Prescription
The objection of prescription may be raised by a peremptory exception. LSA-C.C.P. art. 927A(1). Ordinarily, the party urging an exception of prescription bears the burden of proving that the prescriptive period has elapsed. However, if the plaintiff's claims are prescribed on the face of the petition, the burden shifts to the plaintiff to prove that the prescriptive period has not elapsed. Calloway v. Lobrano, 16-1170 (La.App. 1 Cir. 4/12/17), 218 So.3d 644, 650. Evidence may be introduced to support or controvert an exception of prescription. LSA-C.C.P. art. 931. When evidence is introduced and evaluated at the trial of an exception of prescription, the trial court is not bound to accept as true the allegations of the plaintiff's petition, and an appellate court must review the entire record to determine whether the trial court manifestly erred with its factual conclusions. Krolick v. State ex rel. Dep't of Health & Human Res., 99-2622 (La.App. 1 Cir. 9/22/00), 790 So.2d 21, 25, writ denied, 00-3491 (La. 2/9/01), 785 So.2d 829. See also Calloway, 218 So.3d at 650. Pursuant to this standard, the trial court's ruling must be affirmed unless a reasonable factual basis does not exist for the finding of the trial court, and the record establishes that the finding is clearly wrong. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La. 1993).
In its petition, ExPert stated that it was not aware that the crane was defective and unfit for its intended purpose until it received Oil States' report in April 2016. Therefore, ExPert's redhibition cause of action was not prescribed on the face of the petition, and Techcrane bore the burden of proving the claim was prescribed. To satisfy this burden, Techcrane introduced exhibits at the trial on the exception; therefore, the manifest error standard of review applies.
A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. A defect is also redhibitory when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. LSA-C.C. art. 2520. In a suit based on redhibition, the seller is *661 deemed to know that the thing he sells has a redhibitory defect when he is the manufacturer of that thing. LSA-C.C. art. 2545. It is undisputed that Techcrane is the manufacturer of the allegedly defective crane. An action in redhibition against a manufacturer prescribes one year from the day the defect was discovered by the buyer. LSA-C.C. art. 2534B. Accordingly, prescription on ExPert's cause of action in redhibition was triggered by its actual or constructive knowledge of the defect. See Moore v. Chevron USA, 16-0805 (La.App. 1 Cir. 5/25/17), 222 So.3d 51, 54, writ denied, 17-1085 (La. 10/16/17), 228 So.3d 1221.
Constructive knowledge sufficient to begin prescription is "whatever notice is enough to excite attention and put the injured party on guard or call for inquiry." Moore, 222 So.3d at 54, quoting Hogg v. Chevron USA, Inc., 09-2632 (La. 7/6/10), 45 So.3d 991, 997. Generally, the prescriptive period commences when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence to sufficiently prove the claim. Babineaux v. State ex rel. Dep't of Transp. & Dev., 04-2649 (La.App. 1 Cir. 12/22/05), 927 So.2d 1121, 1125. Stated another way, it "is the acquisition of sufficient information, which, if pursued, will lead to the true condition of things." Moore, 222 So.3d at 54, citing Marin v. Exxon Mobil Corp., 09-2368 (La. 10/19/10), 48 So.3d 234, 246 (internal citations omitted). Whether a party had constructive knowledge is ultimately determined by the reasonableness of the party's action or inaction in light of the surrounding circumstances. Moore, 222 So.3d at 54.
In support of its exception of prescription, Techcrane introduced the report issued by Southern Crane to ExPert following its inspection of the crane. The report is dated October 31, 2013, and ExPert does not dispute that it received the report on or about this date. The report identified a myriad of problems with the crane and detailed ways in which the crane deviated from Techcrane's proposal.[2] The report provided, in part:
The first item we addressed was the bridle twisting. After future [sic] inspection we found that the 74'6? pendant line socket was installed wrong [sic] it should be at 90 degrees and is mounted at 45 degrees causing the pendant to twist the wire and bridle under load.
Boom hoist wire on the 4 layer into the drum is crushed. It appears that the wire was installed to [sic] loose and once load was applied top layers slipped through and crushed the bottom layer.
Gantry Back stay has been notched to allow boom wire rope to clear. The gantry ladder mid support assembly has been modified a [sic] well. If you refer to section 2 in the Techcrane manual the items or [sic] drawn to a different specification.
* * * *
Fleeting angle of boom hoist incorrect [sic] needs to be moved to the right 6 to 12 inches, this is causing stacking problems as seen on the left of photo and premature wire wear.
Swing manifolds and cross over relief valves leaking oil in turret and pedestal. Hoses and flange fittings in the HPU station are leaking and are not tagged.
Significantly, Southern Crane listed the noise from the rotating gears or bearing as an item that required further investigation:
*662 Swing gearbox motors are installed with wrong mounting bolts and are moving left to right as crane swings. There is a loud popping noise in the slewing gear or gearbox planetary will need to investigate future [sic].
In another section of the report, Southern Crane again recommended that ExPert "investigate popping noise" in the turntable bearings/hook rollers and swing system. The report concluded, "All of the items listed above were of a concern to the customer and [Southern Crane]. These items will need to be followed up on and repaired prior to further use of the crane in [Southern Crane's] opinion. Some of the items listed above (Example Gantry) will need to be followed up on by an engineer or the crane manufacturer...."
ExPert acknowledged that Southern Crane recommended that it further investigate the noise from the rotating gears or bearing. ExPert also confirmed that the problem with the rotating bearing caused it to decommission the crane in October 2016 after Oil States advised that the bearing needed to be replaced before the crane could be used reliably. Because the cost to repair the rotating bearing was $1 million, ExPert elected to replace the crane "before the bearing could lock up and shut down all of Expert's dockside operations." Prior to this, the crane remained in operation. Therefore, by Expert's admission, the defect in the rotating bearing rendered the crane unfit for use.[3] The unrebutted evidence introduced by Techcrane established that, upon receiving the Southern Crane report in October 2013, ExPert had constructive notice of the existence of a redhibitory defect.
ExPert argues that, prior to Oil States' involvement, it was unaware of the cause of the problems it was experiencing with the crane and, therefore, was unware of its cause of action against Techcrane. We are not persuaded. Had ExPert timely heeded Southern Crane's advice to investigate further, it would have been "[led] to the true condition of things." Moore, 222 So.3d at 54. A plaintiff is deemed to know what he can learn through the exercise of reasonable diligence and cannot rely on ignorance attributable to his own willfulness or neglect. Id.
Furthermore, we note the trial court's factual finding that ExPert had constructive knowledge of a redhibitory defect upon learning that the crane could not be fitted with an eight-part line to reach a 100-ton lifting capacity. Shortly before the trial court rendered its ruling, it questioned the parties to confirm when ExPert learned of the crane's inability to meet the increased lifting capacity.[4] ExPert conceded at the hearing on the exception that it was aware of this shortly after the crane was installed, which undisputedly occurred in 2013. ExPert had previously admitted in its petition that following the failed attempt to increase the crane's lifting capacity it was aware that the crane was incapable of meeting its operational requirement (100-ton lifting capacity) and did not satisfy the terms of its agreement with Techcrane. [5]
*663 ExPert had actual knowledge of these facts in 2013, more than one year before it filed suit against Techcrane.
After examining the record in its entirety, we conclude that, at the very least, ExPert had constructive knowledge of the existence of a redhibitory defect in the crane more than one year prior to filing suit. This portion of the judgment is affirmed.
Exception of No Cause of Action
An exception of no cause of action tests the legal sufficiency of the petition by determining whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition and is triable on the face of the petition alone. State, by and through Caldwell v. Astra Zeneca AB, 16-1073 (La.App. 1 Cir. 4/11/18), 249 So.3d 38, 42, writ denied, 18-00766 (La. 9/21/18), 252 So.3d 899, and writ denied sub nom. State by & through Caldwell v. AstraZeneca AB, 18-0758 (La. 9/21/18), 252 So.3d 904. See also LSA-C.C.P. art. 931. All facts pled in the petition must be accepted as true. Furthermore, the facts shown in any documents annexed to the petition must also be accepted as true. Calloway, 218 So.3d at 648 ; see also LSA-C.C.P. art. 853 ("A copy of any written instrument that is an exhibit to a pleading is a part thereof.")
An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim that would entitle him to relief. Astra Zeneca AB, 249 So.3d at 42. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. Id. If there are two or more items of damages or theories of recovery that arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss an item of damages or theory of recovery. Id. If the petition states a cause of action on any ground or portion of the demand, the exception should generally be overruled.[6] Id.
As previously explained, Techcrane argued that Expert's claims were governed exclusively by the LPLA and redhibition. For this reason, Techcrane asserted that Expert's petition failed to state causes of action for breach of contract, negligent misrepresentation, fraud/fraudulent inducement, breach of express warranties, tort negligence, and violation of the Louisiana Unfair Trade Practices Act. Conversely, ExPert argued that the LPLA did not apply and, therefore, its additional causes of action were not barred by the LPLA's exclusivity provision. Instead, ExPert asserted that its alternative theories of recovery should be maintained.
The trial court pretermitted ruling on Techcrane's exception of no cause of action, and we decline to resolve the issue for the first time on appeal. We do, however, find that the trial court erred by dismissing Expert's petition with prejudice without reaching the merits of the exception of no cause of action. Because there is no ruling on the exception, those causes of *664 action which were not dismissed by Techcrane's exception of prescription are still pending. Consequently, we reverse the portion of the November 10, 2017 judgment that dismissed the plaintiff's suit with prejudice and remand this matter for further proceedings.
CONCLUSION
For the foregoing reasons, the portion of the trial court's November 10, 2017 judgment that granted the defendant's exception raising the objection of prescription and dismissed the plaintiff's cause of action in redhibition is hereby affirmed. We reverse the portion of the judgment that dismissed the plaintiff's petition and remand to the trial court for further proceedings.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

As discussed more fully in this opinion, Techcrane asserted that redhibition and the Louisiana Products Liability Act (LPLA) were ExPert's exclusive remedies; however, the petition did not specifically allege a cause of action under the LPLA, and the plaintiff disputed that the LPLA applied to its claims. The trial court granted the exception of prescription without specifically determining whether ExPert's claims were governed by the LPLA.

We note that multiple defects can collectively form the basis of a redhibitory action even though many of the defects are minor or have been repaired. See Young v. Ford Motor Co., Inc., 595 So.2d 1123, 1126 (La. 1992).

This finding is further supported by Expert's petition wherein it stated that the crane was defective and "so unfit for service that ExPert had to remove the crane and install a new crane provided by another crane manufacturer." The petition further stated that the crane was, at least, partially functional for three years before having to be discarded. Additionally, in its brief to this court, ExPert identified the "poorly designed and improperly built pedestal flange and rotating bearing that crushed the roller bearings used to rotate the crane" as one of the alleged redhibitory defects existing in the crane.

The trial court did not provide oral or written reasons for granting Techcrane's exception of prescription.

Techcrane disputes that the proposal described a crane with a 100-ton lifting capacity but did not challenge the assertion for purposes of the exception. According to Techcrane, the issue was immaterial to the analysis because ExPert admitted that it was aware of this issue as early as April 2013.

In reviewing a district court's ruling sustaining an exception of no cause of action, appellate courts conduct a de novo review because the exception raises a question of law. Astra Zeneca AB, 249 So.3d at 42.