DESIGNATED NOT FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 0450

MARY SMITH, INDIVIDUALLY AND ON BEHALF OF CONCERNED
MEMBERS OF THE LOUISIANA ASSOCIATION OF THE DEAF, INC.

VERSUS

JIMMY GORE AND JASON ISCH

*Judgment Rendered:*    MAR 2 0 2024

* * * * * * * *

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C690808, Sec. 27

The Honorable Trudy M. White, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Marcus J. Plaisance<br>Mark D. Plaisance<br>Prairieville, Louisiana | Counsel for Defendant/Appellant<br>Louisiana Association of the Deaf |
| Jacob Longman<br>Kathryn Jakuback Burke<br>F. Richard Sprinkle<br>Jennifer Cameron<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellee<br>Mary Smith, individually and on<br>behalf of Concerned Members of<br>The Louisiana Association of the<br>Deaf |

* * * * * * * *

BEFORE: THERIOT, PENZATO, AND GREENE, JJ.

GREENE, J. concurs.

**THERIOT, J.**

This appeal arises from a suit filed against a nonprofit corporation by a member of the corporation seeking to enforce the results of a vote taken at a special meeting of the members. For the reasons set forth herein, we reverse.

## FACTS AND PROCEDURAL HISTORY

The Louisiana Association of the Deaf ("LAD") is a Louisiana non-profit corporation. In June 2019, Jimmy Gore and Jason "Jay" Isch were elected President and Secretary, respectively, of LAD for two-year terms. Shortly thereafter, on August 7, 2019, a petition was submitted to Secretary Isch entitled "Petition to Call for a Special Meeting." This petition was signed by a number of LAD members and, pursuant to the authority bestowed upon LAD members by the LAD Bylaws,[1] requested that Secretary Isch issue a call for a special meeting to be held on August 24, 2019 at 10:00 a.m. The petition stated that the purpose of the special meeting would be to remove Gore from the office of President for the following reasons:

(1) incompetent leadership, management, and governance on behalf of the LAD after being elected, which included bullying and harassment,

(2) demonstrated negligence according to our Bylaws, and

(3) demonstrated power-hungry access to all of our funds, including investments.

The petition also requested that a certified parliamentarian and an interpreter be hired for the special meeting and set forth how the meeting would be conducted, what matters would be voted upon, and what the additional effects of a vote to remove Gore from the office of President would be.[2] Finally, the petition

---

[1] The LAD Bylaws provide that the Secretary shall issue a call for a special meeting of the membership when ordered to do so in writing by one-fifth of LAD's Full Members in a good standing. LAD Bylaws Art. IV, § 2(C) & Art. V, § 2.

[2] The petition sets forth the following effects of a vote to remove Gore as President:

[Gore] shall turn over all of the LAD properties (Google documents, keys, usernames and passwords for computers and modems, and etc. to our VP Crosby in front of the members).

2

requested that the LAD Board cease all board-related activities, including meetings, retreats, and activities, until after the special meeting.

Secretary Isch acknowledged receipt of the petition in an August 13, 2019 letter addressed to "Members of LAD," but stated that "the demands of the petition are not in keeping with our Bylaws and Louisiana state laws." Secretary Isch explained that LAD's Bylaws only authorize LAD's President or Board to initiate the removal process and ultimately remove an officer. Secretary Isch further explained that the reasons given in the petition for Gore's removal were not "clearly specified" and the petition would have to be revised to include clear and specific charges for each point listed, including dates and times of incidents and the identity of individuals involved. Finally, Secretary Isch noted that although the petition requested that the special meeting be called for a specific date and time, LAD's Bylaws only authorize the President or Board to set the date of a special meeting. Therefore, Secretary Isch explained that a revised petition containing the information requested along with original signatures would be required before a special meeting could be called at a date and time to be chosen by the Board.

The original petition of the LAD members was subsequently resubmitted, unrevised, to Secretary Isch on September 21, 2019, along with a cover letter from LAD member Cindy Robillard, stating that the original petition of the LAD members was in compliance with the LAD Bylaws and requesting that Isch contact her to arrange a date and time to verify the signatures on the petition with the LAD membership roster and thereafter to set a date for the special meeting within the next ten days.

In a letter to LAD members dated October 1, 2019, Secretary Isch acknowledged receipt of the resubmitted "unrevised" petition and what he referred

President Gore's membership in LAD shall be terminated for two years and he shall be banned to serve on LAD Board, any LAD committees, attend LAD events and/or meetings and Bingo Zone or represent the LAD in any way for two years. [sic]

3

to as Robillard's "demand letter." Secretary Isch stated that while the "general purpose for the call of the special meeting" was included in the petition, the petition "still [does] not meet our requests and [is] not in keeping with our Bylaws and Louisiana state law." Citing advice of counsel, Secretary Isch went on to state that nothing in the Bylaws prohibits the Board from requiring additional details before calling a special meeting, and accordingly, a revised petition with additional details would be required before the special meeting would be called.

Following Secretary Isch's refusal to call a special meeting, a notice was sent out by "concerned members of LAD" on October 30, 2019, calling a special meeting on November 10, 2019 for the purpose of "rescind[ing] the election of LAD President Gore and LAD Secretary Isch followed by an election of a new LAD president and secretary."

In response to the notice issued by the "concerned members of LAD," LAD's attorney, John G. Veazey, issued a statement on behalf of LAD's Board, disavowing the notice as unauthorized and violative of both the Bylaws and state law and concluding that "[t]he notice for the special meeting on November 10th is illegitimate and shall not be recognized by LAD." Although Veazey reiterated the Board's requirements for submission of a new petition with additional information in order to call a special meeting, he further advised the members that the LAD Bylaws do not permit the members to remove officers or directors, and therefore, any vote by the members at a special meeting could only be advisory in nature.

The special meeting called by "concerned members of LAD" was held on November 10, 2019. President Gore and Secretary Isch did not attend. At the meeting, a majority of members present voted to remove Gore and Isch from their elected positions. The members also voted to have the LAD Vice President fill the newly-vacant office of President and to have the Board fill the vacancy in the office of Secretary. President Gore and Secretary Isch were informed of the results

4

of the special meeting by letters dated November 12, 2019, but refused to step down from their positions.

On November 18, 2019, LAD member Mary Smith filed a "Petition for Temporary Injunction, Permanent Injunction[,] and/or Writ of Mandamus" against President Gore and Secretary Isch in the Nineteenth Judicial District Court, in which she asked the court to order President Gore and Secretary Isch to recognize the validity of the special meeting and the actions taken at the special meeting, step down from office, and turn over all property belonging to LAD. Smith further requested that the court order that all actions taken by Gore and Isch since the special meeting are without effect as not properly authorized, that all actions, letters, firings, and discipline that were improperly instituted by Gore and Isch since their election into office be revoked and rendered moot, that they be enjoined (both individually and through their attorney, Veazey) from harassing LAD members and other individuals present at the special meeting, that they be enjoined from posting on social media about the matters set forth in this suit, and that all costs and attorney fees incurred in filing the action be borne by LAD. Smith's petition states that it is filed by Smith "individually and on behalf of concerned members of [LAD];" however, Smith is the only plaintiff named in the petition and the only plaintiff who signed a verification of the petition.

Following a hearing on December 5, 2019 on Smith's request for a preliminary injunction, the trial court concluded that it "lacks jurisdiction over the person of the named defendants and does not have the legal power and authority to render a personal judgment against Jimmy Gore or Jason Isch as a party to this action." Accordingly, the trial court signed a judgment on January 2, 2020, granting Smith "leave to amend her petition to establish the Court's Jurisdiction over the person of the named defendants, Jimmy Gore or Jason Isch, within 30 days from [January 2, 2020], otherwise her claims will be dismissed."

Thereafter, on January 24, 2020, Smith filed a "First Supplemental and Amended Petition for Temporary Injunction, Permanent Injunction[,] and/or Relief or Writ of Mandamus," in which she added LAD as a defendant and alleged that she is a member of LAD in good standing, that she and others have tried, to no avail, to secure the willingness of Gore and Isch to step down and refrain from harmful behavior to LAD and its members, and that she wishes to assert her rights as a member of LAD for herself individually and on behalf of "all concerned members" in a derivative action pursuant to La. C.C.P. art. 611. Smith prayed for judgment "granting Mary Smith individually and on behalf of the [LAD] a finding that the Special Meeting was lawfully called, noticed, and held; and that the results of the meeting be given legal effect by Judgment, ordering Jimmy Gore and Jason Isch to step down from office and return all property of the [LAD] to its Office in Baton Rouge." Following the filing of the supplemental and amended petition, Gore and Isch were dismissed without prejudice from the suit in their individual capacities on Smith's motion.

LAD filed peremptory exceptions to Smith's supplemental and amended petition, raising objections of no right of action, no cause of action, and improper use of a class action. These exceptions were denied by judgment dated December 9, 2020, and the matter proceeded to trial on the merits.

A bench trial was held over the course of four days in April, May, and July of 2022, following which the trial court rendered judgment on August 9, 2022, ordering or decreeing that the special meeting was properly called and conducted under La. R.S. 12:224 and Article V, Section 2 of the LAD Bylaws, and the vote of the members at that meeting has full force and effect in removing Gore and Isch as LAD officers. The trial court judgment also included a number of other orders and decrees, including the following: Gore shall be removed from the office of LAD President; Isch shall be removed from the position of Executive Director of Deaf

6

Focus; the removal, suspension, reprimand, or ban of certain officers or members is reversed and those officers or members are reinstated; certain LAD officers or directors shall step down from appointed positions and turn over any LAD property; certain individuals are appointed as interim LAD officers or directors; Gore and Isch are enjoined from any further actions as LAD officers in any capacity for a period of ten years; Gore and Isch shall immediately turn over all LAD property; Gore and Isch are enjoined from withdrawing any sums or participating in any way with any payments being made from any of the accounts of money or investments owned by LAD and Deaf Focus; Gore and Isch shall vacate the building within twenty-four hours of notice of judgment, taking with them only their personal belongings; all confidentiality agreements are invalid; the interim Board shall schedule a conference and elections and fill the position of Executive Director of Deaf Focus with a qualified individual as soon as practicable; an accounting shall take place as soon as practicable and any acts of fraud or misappropriation shall be reported to the members; and all costs of litigation, court costs, and reasonable attorney fees shall be borne by LAD.

LAD appealed, arguing that the judgment was in error for the following reasons: Smith had no cause of action to bring a derivative action;[3] Smith had no right of action to bring a claim against LAD;[4] the results of the special meeting

---

[3] LAD urges that the trial court erred in denying its peremptory exception because Smith's petition fails to state a cause of action for a derivative suit. However, as previously noted, Smith sought injunctive and/or mandamus relief in addition to the relief sought by derivative action. This Court does not recognize this sort of partial exception of no cause of action. See *Benoist v. Jackson National Life Insurance Company*, 2022-0878, n. 5 (La.App. 1 Cir. 4/14/23), 364 So.3d 1162, 1166 n. 5 ("This Court has held that an exception of no cause of action should not be maintained in part, so as to prevent a multiplicity of appeals. Therefore, if there are two or more items of damages or theories of recovery that arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss an item of damages or theory of recovery." (citations omitted)). For this reason, the trial court did not err in denying LAD's partial exception of no cause of action.

[4] LAD's peremptory exception urged that Smith does not have a right of action to proceed as an individual in a derivative claim to recover for losses sustained by a corporation due to mismanagement or breach of fiduciary duties. LAD's exception concerned only Smith's right of action to bring a derivative suit, but did not mention her requests for injunctive and/or mandamus relief. This Court has held that the Louisiana Code of Civil Procedure does not provide for a partial exception of no right of action. See *State, by & through Caldwell v. Astra Zeneca AB*, 2016-1073, p. 6 (La.App. 1 Cir. 4/11/18), 249 So.3d 38, 43, *writ denied*, 2018-00766 (La. 9/21/18), 252 So.3d 899, and *writ denied sub nom. State by & through Caldwell v. AstraZeneca AB*, 2018-0758 (La. 9/21/18), 252 So.3d 904 ("Where the plaintiff pleads multiple theories of recovery based on a single occurrence or set of operative facts, the partial grant of an exception of no right of action, which attacks only one theory of recovery and which does not

7

could not be given effect because the meeting was invalid; the ancillary orders issued by the trial court were improper because they involved discretionary acts; and costs and attorney fees should not have been awarded to Smith.

Smith counters that her suit is not a derivative suit, since she did not bring the suit on behalf of LAD, but rather on behalf of herself as a member and on behalf of other concerned members against LAD pursuant to La. R.S. 12:224(H). She further asserts that the trial court's judgment is proper under La. R.S. 12:224(H).

## DISCUSSION

Despite Smith's assertions in her appellate brief that her suit "is not a derivative suit," and that she "did not bring this suit on behalf of LAD[,] she brought it on behalf of herself as a member and on behalf of other concerned members," her supplemental and amended petition clearly states that she is filing the suit as plaintiff "on behalf of the Louisiana Association of the Deaf, Inc.," to assert rights for herself and other concerned members pursuant to La. C.C.P. art. 611, which provides for a member of a corporation to bring a derivative action on behalf of the corporation to enforce a right of the corporation when the corporation refuses to do so. La. C.C.P. art. 611(A). Nevertheless, since Smith now concedes that her suit is not proper as a derivative action, we will consider whether the trial court properly rendered the judgment in her favor under La. R.S. 12:224(H).

Louisiana Revised Statutes 12:224(H) provides a mechanism by which the trial court may remove a member of the board of directors of a corporation from office under certain circumstances:

> Unless the articles or by-laws provide otherwise, the court may, at the
> suit of five or more voting members, remove from office any director
> in case of fraudulent or dishonest acts, or gross abuse of authority or

dismiss a party, would be invalid as an impermissible partial judgment."). As such, the trial court did not err in denying LAD's partial exception of no right of action.

8

discretion, with reference to the corporation. The court may bar from reelection any director so removed, for a period prescribed by the court. The corporation shall be made a party to such action.

Smith alleges that the trial court correctly removed Gore and Isch from their positions pursuant to La. R.S. 12:224(H) after finding that they committed gross abuse of authority and discretion in their capacity as LAD board members. However, Smith's petition was not a "suit of five or more voting members," as required by La. R.S. 12:224(H). As previously noted, the only named plaintiff in this suit is Smith. Although the petition references "concerned members of the Louisiana Association of the Deaf," none of those members are named as plaintiffs, nor does the petition include allegations that the concerned members are "voting members." Accordingly, Smith's petition could not form the basis for the removal of board members by the trial court under La. R.S. 12:224(H).

Although the trial court could not remove the officers pursuant to La. R.S. 12:224(H), Smith's petition also sought a writ of mandamus, and the judgment issued by the trial court included orders in the form of a mandamus, ordering LAD and its officers to recognize the validity of the special meeting and give effect to its results. LAD argues that the trial court's issuance of such orders was in error.

Louisiana Code of Civil Procedure article 3864 provides that a writ of mandamus may be directed to a corporation or an officer thereof to compel either: (1) the holding of an election or the performance of other duties required by the articles of incorporation or bylaws, or as prescribed by law, or (2) the recognition of the rights of the corporation's members or shareholders.

A writ of mandamus may be issued when the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. La. C.C.P. art. 3862. Mandamus is an extraordinary remedy, to be used only when there is a clear and specific legal right to be enforced or a duty which ought to be performed; it never issues in doubtful cases. *Texas Brine Co., LLC v.*

*Naquin*, 2019-1503, p. 7 (La. 1/31/20), 340 So.3d 720, 725. Mandamus may be used to compel the performance of corporate duties which are purely ministerial in nature, i.e., those duties which require no exercise of judgment or discretion, however slight, in their performance. *Thornton ex rel. Laneco Construction Systems, Inc. v. Lanehart*, 97-1995, p. 6 (La.App. 1 Cir. 12/28/98), 723 So.2d 1118, 1123.

In issuing judgment ordering LAD and other individuals to recognize and give effect to the results of the special meeting and issuing other ancillary orders, the trial court first concluded that the special meeting was properly called under La. R.S. 12:224 and LAD's Bylaws.

As previously noted, LAD's Bylaws contain a provision for members to demand a special meeting. Article V, Section 2 states that a special meeting "shall be called upon the written request of one-fifth (1/5) of the Full Members of the LAD in good standing."[5] Section 2 further provides that the call issued for a special meeting shall state the purpose of the meeting and give ten days prior written notice of the date of the meeting. Article IV, Section 2(C) of the Bylaws requires the LAD Secretary to issue a call for a special meeting when requested by one-fifth of the full members in good standing.

Louisiana's Nonprofit Corporation Law, La. R.S. 12:201, et seq., also contains a provision for calling a special meeting of the members. Louisiana Revised Statutes 12:229(C) provides that upon written request of any person

---

[5] Article III, Section 1 of the LAD Bylaws defines "Full Member":

> All Full Members shall be deaf, hard of hearing and deaf-blind people, 18 or above of age, residing in Louisiana having paid their required dues. Full members shall have all rights and privileges of membership including, but not limited to, to [sic] the right to vote and the right to hold any LAD office or position.

> Each graduating senior of the Louisiana School for the Deaf and all graduating seniors of regular public, private, or special schools who are deaf, hard of hearing, or deaf-blind may be given by the Executive Board a free one-time two-year Full Membership in this Association for the first two (2) years following their graduation.

The definition of "Member in Good Standing" is also provided in Article III of the LAD Bylaws:

> Only members whose dues are paid and current pursuant to Article III, Section 7 shall be members in good standing of LAD.

10

authorized in the articles or bylaws of a nonprofit corporation to call a special meeting, the Secretary shall call a special meeting of the members to be held at the time which the Secretary fixes, not less than ten or more than sixty days after the receipt of the request. If the Secretary neglects or refuses to issue the call, the person making the request may do so. La. R.S. 12:229(C). Louisiana Revised Statutes 12:230(A) requires the authorized person or persons calling a meeting to give written notice of the time, place, and purpose of the meeting to all members entitled to vote at the meeting.

Thus, reading the LAD Bylaws in conjunction with La. R.S. 12:229(C), upon written request of "one-fifth (1/5) of the Full Members of the LAD in good standing," Secretary Isch was required to issue a call for a special meeting, giving at least ten days prior notice and stating the purpose of the meeting, i.e., a vote of members to remove President Gore. Although the members requesting the meeting do not have the authority under either the LAD Bylaws or La. R.S. 12:229(C) to demand that the special meeting be held on a particular date, upon Secretary Isch's failure to issue the call within the time allowed for him to do so, the person making the request for the special meeting, in this case, one-fifth of the Full Members of LAD in good standing, may issue the call. See La. R.S. 12:229(C).

The October 30, 2019 notice entitled "Call For A Special Meeting of the LAD Members," which purported to call a special meeting on November 10, 2019, does not state that it is issued by those Full Members of LAD in good standing who signed the petition requesting a special meeting. It simply states that "concerned members of LAD are calling a Special Meeting of the LAD members." Further, the purpose listed on the October 30, 2019 notice is not the same as the purpose stated on the petition submitted to Secretary Isch requesting a special meeting. While the petition signed by the full members in good standing stated

11

that the purpose of the special meeting would be to remove President Gore from office, the call issued by the "concerned members of LAD" stated that the purpose of the special meeting would be to "rescind the election of LAD President Gore and LAD Secretary Isch followed by an election of a new LAD president and secretary." Although the full members in good standing who petitioned Secretary Isch to call a special meeting may issue the call themselves pursuant to La. R.S. 12:229(C) upon Secretary Isch's failure to do so timely, there is no provision that allows for the call to be issued by any other person besides the person or persons who made the request for a special meeting, nor is there any provision allowing the special meeting to be called for a different purpose than that stated in the written request previously submitted to the Secretary. As the October 30, 2019 notice was essentially issued anonymously and called the special meeting for a different purpose than was stated in the petition twice submitted to the Secretary, the notice was defective, the November 10, 2019 special meeting was not properly called, and the actions taken are null and void. See *Mount Gideon Baptist Church, Inc. v. Robinson*, 2001-0749, pp. 7-8 (La.App. 1 Cir. 2/15/02), 812 So.2d 758, 763, *writ denied*, 2002-1229 (La. 6/21/02), 819 So.2d 1024 (actions taken at a "legally flawed" special meeting where notice was not sent, a quorum was not present, and the applicable statutory requirements for the actions taken at the meeting were not followed, were invalid); *Bethlehem Missionary Baptist Church v. Henderson*, 522 So.2d 1339, 1341 (La.App. 2 Cir. 1988) (failure to give notice that a particular issue is to be considered at a special meeting will void that meeting); *Jones v. Shreveport Lodge No. 122, B. P. O. E.*, 221 La. 968, 975, 60 So.2d 889, 892 (La. 1952) (where the law requires notice of the purpose of a meeting before the meeting may be convened, these statutory requirements are sacramental, and failure to comply therewith renders the action void and of no effect).

12

Because the November 10, 2019 meeting was invalid, the trial court erred in rendering judgment decreeing that the meeting was lawfully called and ordering other ancillary relief carrying out the actions taken at the meeting.

## DECREE

For the reasons set forth herein, the judgment of the trial court is reversed. Costs of this appeal are assessed to plaintiff/appellee, Mary Smith.

**REVERSED.**