# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #021

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **8th day of May, 2019**, are as follows:

**BY WEIMER, J.**:

2018-CC-1768     THE STATE OF LOUISIANA, EX REL. JAMES D. "BUDDY" CALDWELL, ATTORNEY GENERAL v. MOLINA HEALTHCARE, INC; MOLINA INFORMATION SYSTEMS, L.L.C. D/B/A MOLINA MEDICAID SOLUTIONS; PARAMAX SYSTEMS CORPORATION; AND UNISYS CORPORATION (Parish of E. Baton Rouge)

The writ application was granted in this matter to review the correctness of the appellate court's ruling, sustaining an exception of no right of action for the Attorney General's lawsuit against the defendants, which are corporate entities allegedly serving as the state's fiscal intermediary for the Medicaid program. By statute, the Louisiana Department of Health has the capacity to sue and be sued for programs that it administers, such as Medicaid. However, because the Louisiana Department of Health has delegated–and the defendants allegedly contractually accepted–some of the administrative functions of the state's Medicaid program, we find that the Attorney General has the capacity, and hence a right of action, to prosecute this lawsuit. VACATED; REMANDED.

JOHNSON, C.J., additionally concurs and assigns reasons.

GUIDRY, J., additionally concurs for the reasons assigned by Chief Justice Johnson.

GENOVESE, J., additionally concurs for the reasons assigned by Chief Justice Johnson.

05/08/19

## SUPREME COURT OF LOUISIANA

### No. 2018-CC-1768

**THE STATE OF LOUISIANA, EX REL. JAMES D. "BUDDY"
CALDWELL, ATTORNEY GENERAL**

**VERSUS
MOLINA HEALTHCARE, INC.;
MOLINA INFORMATION SYSTEMS, L.L.C. D/B/A
MOLINA MEDICAID SOLUTIONS; PARAMAX SYSTEMS
CORPORATION; AND UNISYS CORPORATION**

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST
CIRCUIT, PARISH OF EAST BATON ROUGE*

**WEIMER**, Justice.

The writ application was granted in this matter to review the correctness of the

appellate court's ruling, sustaining an exception of no right of action for the Attorney

General's lawsuit against the defendants, which are corporate entities allegedly

serving as the state's fiscal intermediary for the Medicaid program. By statute, the

Louisiana Department of Health has the capacity to sue and be sued for programs that

it administers, such as Medicaid. However, because the Louisiana Department of

Health has delegated–and the defendants allegedly contractually accepted–some of

the administrative functions of the state's Medicaid program, we find that the

Attorney General has the capacity, and hence a right of action, to prosecute this

lawsuit.

**BACKGROUND**

The state, represented by its Attorney General, filed this lawsuit on June 26, 2014, against defendants, Molina Healthcare, Inc., Molina Information Systems, L.L.C. d/b/a Molina Medicaid Solutions, and Unisys Corporation. As described in the state's petition, "[o]ver the last thirty ("30") years, the Defendants have been the fiscal agent responsible for processing Louisiana's Medical pharmacy provider reimbursement claims." Pursuant to a contract to which the state itself is allegedly a party, "the Defendants assumed operational liability" of a "customizable" computerized system known as the Louisiana Medicare Management Information System ("LMMIS"). As part of defendants' duties, they are "responsible for the operation and maintenance of LMMIS, as well as creating and implementing design changes to the LMMIS that comply with State and federal mandates."

As further described in the state's petition, since January 1984, Unisys has engaged in the business of operating, maintaining, implementing, and managing LMMIS. In May 2010, the Molina defendants acquired Unisys' Health Information Management Division, and the Unisys defendant became a subcontractor of the Molina defendants. Unisys continues to work with the Molina defendants to operate LMMIS. For simplicity's sake, given the defendants' alleged corporate affiliation and noting the state's representation in brief that "Molina has been dismissed from the suit," this opinion will refer to the defendants collectively as "Unisys."[1]

The crux of the state's allegations in this lawsuit is that Unisys caused the Louisiana Department of Health ("LDH") to overpay Medicaid pharmacy providers through Unisys' improper operation and management of LMMIS. Under theories of

_____

[1] There is only one petition in the record and, although the court was informed that the Molina defendants were dismissed, the court is constrained to recount the allegations as presented in the petition.

2

fraud, breach of contract, negligence, and negligent misrepresentation, the state contends that it is entitled to recover from Unisys the amounts LDH overpaid to the pharmacy providers as far back as 1989.[2] The state's petition also proposes statutory theories of recovery under Louisiana's Unfair Trade Practices Act ("LUTPA," La. R.S. 51:1401, *et seq*.) and Louisiana's Medical Assistance Programs Integrity Law ("MAPIL," La. R.S. 46:437.1, *et seq*.); however, these statutory theories of recovery were earlier dismissed on Unisys' exceptions of no cause of action. See **State ex rel. Caldwell v. Molina Healthcare, Inc.**, 15-0492 (La.App. 1 Cir. 1/22/16) (unpublished writ action; 2016 WL 10771114).

As the state further describes its remaining contract-based claims, Unisys has served as "the fiscal agent responsible for processing Louisiana Medicaid's pharmacy provider reimbursement claims." LMMIS has been "the core tool" used by Unisys while serving as the state's Medicaid "fiscal agent." Louisiana's Medicaid program maintains a drug formulary as part of the "State Plan," and LMMIS should select reimbursement prices from the lowest price point in the state's formulary. These reimbursement prices are then paid by the state to medical providers, including pharmacies. However, according to the state, Unisys "fail[ed] to process the State's reimbursements according to the reimbursement formula set forth in the State Plan. Instead, the Defendants adjudicated claims based on a formula that failed to adhere to both State and federal policies concerning reimbursement." As a result, the state has overpaid "excessive amounts" on reimbursement for drugs dispensed by pharmacies.

---

[2] LDH was previously known as the Louisiana Department of Health and Hospitals ("DHH"). Because the name change occurred during the period of time covered by the state's lawsuit, for convenience, this opinion uses the current name, although the previous name will sometimes be used when discussing pleadings or court decisions.

According to the state, the state was unaware until recently of the excessive reimbursements. In contrast, the state alleges "nearly two-hundred thirty … highly trained professionals, including programmer analysts and engineers" are employed by Unisys, which is "responsible for implementing" a system that conforms with the Louisiana Medicaid program.

In the same pleading whereby Unisys obtained dismissal of the state's statutory claims brought under LUTPA and MAPIL, Unisys also sought dismissal of the state's contract-based claims.[3] Nevertheless, the state's contract-based claims were untouched, and remained viable, under the appellate court's ruling dismissing the statutory claims. See **Molina Healthcare, Inc.**, *supra*.

Unisys revisited its exception of no right of action, however, after the appellate court found the state had no right of action regarding Medicaid drug payments in **State v. Abbott Laboratories., Inc.**, 15-1626 (La.App. 1 Cir. 10/21/16), 208 So.3d 384, 390, writs denied, 17-0149, 17-0125 (La. 3/13/17), 216 So.3d 802, 808, overruled in part on other grounds by **State, by and through Caldwell v. Astra Zeneca AB**, 16-1073 (La.App. 1 Cir. 4/11/18), 249 So.3d 38. The district court denied Unisys' exception of no right of action, explaining:

> After carefully reviewing and considering the memoranda together with the law in this case, and specifically **State v. Abbott Laboratories, Inc.**, 2015-1626 (La.App. 1 Cir. 10/21/16), 208 So.3d 384, *writ denied*, 2017-0125, 2017-[01]49 (La. 3/13/17), 2017 WL 1075533, 2017 WL 1076464, the Court finds that the State of Louisiana is a party to the contract and indeed the enforcing body which gives the

---

[3] Among other exceptions not relevant to this discussion, Unisys brought the dilatory exception of lack of procedural capacity and the peremptory exception of no right of action. The exception of lack of procedural capacity was premised on Unisys' contention that "[a]s the signatory on the contracts on which the State bases this action, [DDH], not the State of Louisiana or its Attorney General, is the sole party with authority to bring this action." Similarly, the exception of no right of action was premised on the contention that DHH "alone has privity to sue under the contracts and is the real party in interest," such that "neither the State nor the Attonrey General has any standing or right of action to bring []DHH's claims."

4

State a real and actual interest in this litigation. In other words, the State of Louisiana has standing. …

Unisys sought supervisory review from the same appellate court that decided **Abbott Laboratories, Inc.** Largely in reliance on **Abbott Laboratories, Inc.**, and because LDH had a statutory right to sue and be sued, the appellate court agreed with Unisys that the state had no right of action:

> WRIT GRANTED. Under our *de novo* review, we find that the [district] court erred in denying the exception raising the objection of no right of action as to the State of Louisiana's claims of breach of contract, fraud, negligence, and negligent misrepresentation. **State v. Abbott Laboratories, Inc.**, 2015-1626 (La.App. 1st Cir. 10/21/16), 208 So.3d 384, reh'g denied, (Dec. 22, 2016), writs denied, 2017-0149 (La. 3/13/17), 216 So.3d 802 & 2017-0125 (La. 3/13/17), 216 So.3d 808. The State of Louisiana, itself, is not a party to any of the contracts at issue and has no claim for the breach thereof. **Dennis v. Copelin**, 94-2002 (La.App. 4th Cir. 2/1/96), 669 So.2d 556, 561, writ denied, 96-1012 (La. 6/21/96), 675 So.2d 1079. The right belongs to the party to the contracts at issue, [LDH], which is a body corporate with the power to sue and be sued. La. R.S. 36:251(A); also see **Abbott Laboratories, Inc.**, 208 So.3d 384. The State of Louisiana has no interest in judicially enforcing the rights asserted in the petition. **Jenkins v. City of Baton Rouge**, 2014-1235 (La.App. 1st Cir. 3/9/15), 166 So.3d 1032, 1035. Accordingly, the [district] court's judgment denying the defendant's exception of no right of action is reversed, the exception of no right of action is sustained, and the matter is dismissed, with prejudice.

**State ex rel. Caldwell v. Molina Healthcare, Inc.**, 17-0778 (La.App. 1 Cir. 8/14/18), (unpublished writ action; 2018 WL 3913330).

The state filed a writ of certiorari with this court, which was granted. **State ex rel. Caldwell v. Molina Healthcare, Inc.**, 18-1768 (La. 1/18/19), ____So.3d____.

### LAW and DISCUSSION

Generally, a legal action can be brought only by a person having a real and actual interest in doing so. See La. C.C.P. art. 681. "When the facts alleged in the petition provide a remedy under the law to someone, but the plaintiff who seeks the relief is not the person in whose favor the law extends the remedy, the proper

objection is no right of action, or want of interest in the plaintiff to institute the suit." **Howard v. Administrators of Tulane Educ. Fund**, 07-2224, p. 16 (La. 7/1/08), 986 So.2d 47, 59 (citing 1 FRANK L. MARAIST & HARRY T. LEMMON, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE § 6.7, 121 (1999)). Such an objection is presented as a peremptory exception of no right of action raised by the defendant or noticed by the court on its own motion, in either the trial or appellate court. See La. C.C.P. arts. 927 and 2163. "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 923.

"The burden of showing that the plaintiff has stated no cause of action is upon the exceptor." **City of New Orleans v. Bd. of Directors of Louisiana State Museum**, 98-1170, p. 9 (La. 3/2/99), 739 So.2d 748, 755. "On the trial of the peremptory exception [of no right of action] pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." La. C.C.P. art. 931. In instances when "evidence [has been] introduced at the hearing" on a peremptory exception, "the trial court's findings of fact ... are subject to the manifest error-clearly wrong standard of review." **London Towne Condominium Homeowner's Ass'n v. London Towne Co.**, 06-401, p. 4 (La. 10/17/06), 939 So.2d 1227, 1231.

In other respects, "[t]he determination of whether a plaintiff has a legal right to bring an action raises a question of law, which requires de novo review." **Rebel Distributors Corp., Inc. v. LUBA Workers' Comp.**, 13-0749, p. 10 (La. 10/15/13), 144 So.3d 825, 833 (citing, *inter alia*, **Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.**, 06-0582, p. 9 (La. 11/29/06), 943 So.2d 1037, 1045. "An appellate court considering an exception of no right of action should focus on

whether the particular plaintiff has a right to bring the suit and is a member of the class of persons that has a legal interest in the subject matter of the litigation, assuming the petition states a valid cause of action for some person." **Rebel Distributors**, 13-0749 at 10, 144 So.3d at 833. If doubt exists about the appropriateness of an objection of no right of action, it is to be resolved in favor of the plaintiff. **Rebel Distributors**, 13-0749 at 10, 144 So.3d at 833.

In the instant case, as noted earlier, only non-statutory claims, stemming from Unisys' contract to allegedly serve as the fiscal intermediary for Louisiana's Medicaid program, remain viable against Unisys. Unisys' exception to those contract-based claims is primarily based on La. R.S. 36:251(A), which, in pertinent part, provides: "[LDH] is created and shall be a body corporate with the power to sue and be sued." According to Unisys, the power of LDH to sue and be sued is consistent with powers ascribed to LDH's secretary. See, e.g., La. R.S. 36:254(D)(1)(a)(i) (LDH's "secretary shall direct and be responsible for the Medical Assistance Program."); *id.* (D)(2)(ii)(d) (generally empowering LDH's secretary to "[f]ile suit on behalf of the Medical Assistance Program").

Unisys renewed its exception of no right of action in light of **Abbott Laboratories, Inc.**, in which the court cited *inter alia* La. R.S. 36:251 and ruled: "In the absence of constitutional or statutory provisions to the contrary, the State cannot bring a cause of action that is the property of one of its political subdivisions which has the right to sue and be sued." **Abbott Laboratories, Inc.**, 15-1626 at 6, 208 So.3d at 388. Based on **Abbott Laboratories, Inc.**, Unisys presently contends that La. R.S. 36:251(A) vests LDH with the exclusive power to file suit and, thus, the state and its Attorney General have no right of action.

7

The state responds that "[t]he fact that one department may have a right of action does not preclude others from also having one." The state emphasizes that La. Const. art. IV, § 8[4] describes the powers of the Attorney General: "As necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding … ."[5] According to the state, the legislature's conferring juridical capacity on LDH did not sever LDH from the larger state "body politic." Relatedly, the contract with Unisys was not for LDH alone but rather, "the *entire purpose* of the contract was to benefit the State by establishing a cost-effective administration for the State Medicaid program."

As an initial observation, focusing–as our civil law methodology requires–on the statutory text, La. R.S. 36:251(A), relied on by Unisys, does not use the term "exclusive," or words to that effect, when describing LDH's right to file suit. Even so, not every governmental entity has been statutorily authorized as having the right to sue and be sued. A cardinal rule of statutory interpretation directs that presumptively "every word, sentence, or provision in a law was intended to serve

---

[4] Unisys argues that the Attorney General is precluded from asserting a constitutional basis to defeat Unisys' exception of no right of action because the first time such assertion was made was in the appellate court, and then on rehearing. This argument lacks merit because the Attorney General prevailed against Unisys' exception until the appellate court granted the exception on initial hearing. The Attorney General was not required to raise all arguments in support of its favorable judgment until the appellate court granted Unisys' exception and then, for the first time, the Attorney General sought a reversal of a judgment. See La. C.C.P. art. 2133(B) ("A party who does not seek modification, revision, or reversal of a judgment in an appellate court, including the supreme court, may assert, in support of the judgment, any argument supported by the record, although he has not appealed, answered the appeal, or applied for supervisory writs.").

[5] The Attorney General also points to La. R.S. 13:5036, a statute with similar wording as La. Const. art. IV, § 8: "The attorney general may institute and prosecute any and all suits he may deem necessary for the protection of the interests and rights of the state." La. R.S. 13:5036. Because the Louisiana Constitution is a superior source of law with substantially similar provisions as a statute, the constitutional provision will be considered. Therefore, the analysis focuses on whether the similar wording found in La. Const. art. IV, § 8 defeats Unisys' exception. See **Louisiana Fed'n of Teachers v. State**, 13-0120, p. 2 (La. 5/7/13), 118 So.3d 1033, 1037 (observing that "constitutional provisions are never mere technicalities, but are part of the basic, fundamental provisions in our system of laws").

some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed." **Louisiana Fed'n of Teachers v. State**, 13-0120, p. 39 (La. 5/7/13), 118 So.3d 1033, 1057-58. Also, "a statute more specifically directed to the matter at issue must prevail as an exception to a statute more general in character." **Esteve v. Allstate Ins. Co.**, 351 So.2d 117, 121 (La. 1977). If these were the only principles at issue, the analysis would be likely be complete and Unisys would prevail because the court would be constrained to hold that the authorization in La. R.S. 36:251(A) for LDH to sue and be sued is a more specific law than the authorization in La. R.S. 13:5036 for the Attorney General to file lawsuits. However, and unlike **Abbott Laboratories, Inc.**, the Attorney General not only relies on the statutory authority to file suit under La. R.S. 13:5036, but also relies on the constitutional authority to do so under La. Const. art. IV, § 8.[6]

To restate the analysis to this point, Unisys relies on LDH's statutory right to sue and be sued, whereas the Attorney General relies on the constitutional right of the Attorney General to file civil lawsuits. Unisys contends that the fact the legislature expressly conferred a right to sue on LDH means that LDH's right is exclusive and precludes the Attorney General from filing lawsuits innvolving the Medicaid program administered by LDH. The state contends that the Attorney General's constitutional authority to file lawsuits is broad, if not unfettered, and enables the Attorney General to bring the instant lawsuit. However, the legislature has seen fit to specifically

---

[6] The appellate court's decision in **Abbott Laboratories, Inc.** was based on the observation that the MAPIL and LUTPA statutes conferred a right of action in favor of the Attorney General. **Abbott Laboratories, Inc.**, 15-1626 at 8-9, 208 So.3d at 389-90. However, the court found no statutory authorization for the Attorney General to bring claims for "fraud, negligent misrepresentation, redhibition, and unjust enrichment." Unlike the instant case, the Attorney General apparently did not assert constitutional authority as a basis for a right of action to bring those claims: "the State has not pointed out to this court, and we have not found, authority for the State to bring its claims outside of LUTPA and MAPIL for fraud, negligent misrepresentation, redhibition, and unjust enrichment." **Abbott Laboratories, Inc.**, 15-1626 at 9, 208 So.3d at 390.

9

authorize the Attorney General to file lawsuits in certain causes of action. For example, one need look no further than this case, in which the Attorney General's petition cites statutes conferring authority to the Attorney General to bring actions under LUTPA and MAPIL. The legislature's express grant of authority in certain causes of action tends to undermine the breadth that the Attorney General would have this court now interpret La. Const. art. IV, § 8 to confer. Therefore, it might be said that La. R.S. 36:251(A) (conferring on LDH the right to sue and be sued) and La. Const. art. IV, § 8 (describing the Attorney General's right to file lawsuit) are in conflict. However, this court is tasked with ascertaining whether a conflict between the cited provisions is merely superficial and whether the substance of these laws can be harmonized. "[B]ecause it is presumed that the legislature acts within its constitutional authority in enacting legislation, this court must construe a statute so as to preserve its constitutionality when it is reasonable to do so." **City of New Orleans v. Louisiana Assessors' Ret. & Relief Fund**, 05-2548, pp. 12-13 (La. 10/1/07), 986 So.2d 1, 12-13.

Our analysis continues accordingly, with an aim to harmonize, if possible, the legislatively-ascribed status of the LDH as "a body corporate with the power to sue and be sued" and the constitution's direction that "[a]s necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding." See La. R.S. 36:251(A); La. Const. art. IV, § 8. This is the first time this court is called on to examine how these two specific laws relate, but, in a broader sense, this is not a novel issue. The jurisprudence provides significant and longstanding guidance in other instances in which a governmental entity has legislatively-conferred status to "sue or be sued," and the Attorney General sought to represent that entity.

In **State v. Tensas Delta Land Co.**, 126 La. 59, 52 So. 216 (1910), "the Attorney General in the name of the state" brought a lawsuit to rescind allegedly fraudulent land conveyances from Tensas Basin levee district. The targets of the lawsuit were nine nonresident defendants who allegedly conspired with levee district commissioners to buy land for "nominal" prices and resell the land for approximately four times the purchase price. *Id.* 52 So. at 217. The defendants lodged various exceptions, including an exception that the state "has no right, power, or authority to prosecute and maintain this action" in such capacity. *Id.* 52 So. at 218. As the **Tensas Delta Land Co.** defendants further urged, the state had "created the corporation known as the Board of Levee Commissioners of the Tensas Basin Levee District, and given it full power to sue and be sued." *Id.* Additionally, the state had "authorized the said board to contract with these defendants in regard to said lands and to sue to recover the same." *Id.*

The **Tensas Delta Land Co.** court agreed that neither the Attorney General nor the state had a right of action that survived the legislature's conferring corporate status on a governmental entity with the right to sue and be sued. *Id.* 52 So. at 221. As a general proposition, the **Tensas Delta Land Co.** court rejected an argument for duplicative rights to sue, akin to the argument the Attorney General has raised in the instant case, explaining:

> The argument that the said board is nothing more than a mere agency or instrumentality of the state, and that therefore the state may sue in every case where the said board might sue, contains a manifest non sequitur. Every city, town, and parish of the state is a mere agency or instrumentality of the state; but no one would venture to say that the Attorney General could ignore the existence of these corporations and enforce, in the name of the state, any cause of action which any of them might have.
>
> The legislative control over corporations of the character of this levee board is much more complete than over municipal corporations

11

proper and parish–it made them, and can at any time abolish them, so long as the obligations of their contracts are not thereby impaired–but these corporations have their existence and exercise their functions by and under the Constitution and statutes of the state, and so long as these established laws remain in force it is they which must regulate the property and other rights of said corporations and their modes of action, and the disposition of their property, and their rights to sue and to be sued. If one of these corporations have a right of action, the proper functionary to enforce same is the governing body of the corporation, and not the Attorney General, or the state.

*Id.* To the general proposition that the state and Attorney General have no right to sue duplicative of the statutory right to sue conferred on a governmental entity, this court provided an exception:

[I]t is true that if the governing body of one of these corporations fails in its duty to bring a suit which clearly it ought to bring, the courts may (only, however, under highly exceptional circumstances) allow any citizen or taxpayer of the district to bring the suit; and, in such a case, the same privilege might for the same reason be extended to the state; but nothing of that kind is pretended in this case.

*Id.*

After **Tensas Delta Land Co.**, this court visited the question of whether the Attorney General or a state agency, the Louisiana highway commission, had authority to hire counsel to represent the highway commission. **Saint v. Allen**, 172 La. 352, 134 So. 246, 246-47, 249 (1931). The legislature had established that the highway "[c]ommission shall be a body corporate and as such may sue and be sued, plead and be impleaded, in any Court of Justice." *Id.*, 134 So. at 247 (quoting 1921 La. Acts Ex. Sess. 95 § 3). Relying on "the provisions of the Constitution, creating the office of Attorney General and defining the duties thereof,"[7] the Attorney General in **Allen**

_____

[7]    The constitutional provision then in effect, in pertinent part, indicated:

The Attorney General and the assistants … shall attend to, and ha ve charge of all legal matters in which the State has an interest, or to which the State is a party, with power and authority to institute and prosecute or to intervene in any and all suits or other proceedings, civil or criminal, as they may deem necessary for the assertion or protection of the rights and interests of the State.

12

argued he had the authority to hire counsel and that any legislation to the contrary was unconstitutional. *Id.*, 134 So. at 246-47.

The **Allen** court rejected the Attorney General's resort to the constitutionally described duties as a justification to override the separate nature of the highway commission as established by the legislature. The court explained:

> It was not intended that the word, "interest," used in this section [La. Const. 1921 art. VII, § 56], should be received or interpreted in its broadest sense, in connection with the interests, possessed by the state. Such an interpretation would make the accomplishment of the duties of the Attorney General and his assistants, next to impossible, if not impossible. Therefore, so far as relates to the Constitution, that instrument, with reference to the duties of the Attorney General and his assistants, has confined, by implication, the duties, there demanded to be rendered, to those interests, possessed by the state, as a distinct entity, and has left it to the Legislature to impose such other duties upon those officials as it may deem proper to do from time to time.

*Id.*

The **Allen** court also rejected two arguments the Attorney General essentially reproduces in the instant case. Those arguments, as stated in **Allen**, are that the Attorney General has authority to represent the governmental agency because: 1) all relevant contracts were "made in the name of the state," and 2) because "the state provides the commission with funds with which to discharge the purposes of its creation." **Allen**, 134 So. at 249. This court explained:

> These facts, however, are insufficient to make the commission and the state one and the same. They merely show that the commission is an agency of the state. It does not even follow that, because contracts for highway improvements must be entered into in the name of the state, suits on such contracts should be brought by the state or against it, for the commission, as a body corporate, is given express power to sue and be sued, which shows that such suits (which might be reasonably expected to constitute the greater part of the litigation in which the commission might become involved) should be instituted by the commission, and not by the state.

---

**Allen**, 134 So. at 247 (quoting La. Const. 1921 art. VII, § 56).

13

*Id.* The **Allen** court reasoned that unless the legislature provided otherwise, the Attorney General's constitutionally-described duties were limited to representing the state, not its agencies:

> Our conclusions therefore are that the Constitution, in defining the duties of the Attorney General and his assistants, confines those duties, by implication, to the state, as a distinct entity from its corporate agencies, and to the duties imposed upon those officials by law, and that the Louisiana highway commission is one of those agencies, and hence the duties and powers of the Attorney General and his assistants do not, by virtue of the Constitution, save as some of those duties may be prescribed by statute, attach to the commission.

*Id.*

As a last analytical step in **Allen**, this court examined "whether any statute of the state imposes upon the Attorney General and his assistants the duty of representing the commission, and this, to the exclusion of the right, on the part of the commission, to employ other counsel." *Id.*, 134 So. at 249. This court found no such statute and concluded the power to represent the commission was off-limits to the Attorney General because of the "implied power to employ counsel …, arising out of the power to sue and be sued." *Id.* 134 So. at 250.

In **State ex rel. Jones v. Doucet**, 203 La. 743, 14 So.2d 622 (1943), this court again examined the authority of the Attorney General to bring litigation on the state's behalf in light of another governmental entity having the capacity to sue and be sued. The Attorney General alleged a "former sheriff of St. Landry Parish … misused and otherwise misappropriated" funds totaling $25,473.30 "during his tenure of office." *Id.* 14 So.2d at 623. The Attorney General further contended "that if the alleged irregularities had not occurred there would exist a surplus in the Sheriff's Salary Fund of St. Landry Parish to be remitted … to the State of Louisiana and to its various taxing bodies of St. Landry Parish." *Id.* The **Doucet** court ruled "that the State of

Louisiana is entitled to recover herein that portion of the alleged surplus in the Sheriff's Salary Fund due and owing to it; but with respect to those funds belonging to its political subdivisions it has neither a cause nor right of action." *Id.* 14 So.2d at 626.

This court in **Doucet** rejected the Attorney General's argument that his constitutional "duty of representing the state in all legal matters in which it has an interest" gave the state a right of action. *Id.* 14 So.2d at 625. The court explained that the Attorney General's constitutional duty does not result in the state "thereby [being] granted an interest in claims belonging to its subdivision." *Id.* This court's jurisprudence, including **Tensas Delta Land Co.**, *supra*, demonstrates "the fundamental proposition that, in the absence of constitutional or statutory provisions to the contrary, the state cannot stand in judgment on a cause of action that is the property of one of its political subdivisions which has the right to sue and be sued." **Doucet**, 14 So.2d at 625.

Of great importance for the instant case, the **Doucet** court acknowledged the general rule and an exception established in **Tensas Delta Land Co.** The general rule was described in this manner:

> It has long been settled in our jurisprudence that as a general rule the state is without authority to institute suit on a cause of action belonging to a political subdivision that possesses the right to sue and be sued. This was held in **State v. Tensas Delta Land Company, Limited**, 1910, 126 La. 59, 52 So. 216, 221 … .

**Doucet**, 14 So.2d at 624. The exception, explained in terms of the "highly exceptional circumstances" noted in **Tensas Delta Land Co.**, was described as follows:

> Of course, if a political subdivision should neglect or refuse to institute suit and to assert its rights as beneficiary of a claim, which is not shown to exist in the instant controversy, an altogether different

15

situation would arise. Respecting a matter of that nature, the following language from the **Tensas Delta Land Company** decision, *supra*, is appropriate:

> Again, it is true that if the governing body of one of these corporations fails in its duty to bring a suit which clearly it ought to bring, the courts may (only, however, under highly exceptional circumstances allow any citizen or taxpayer of the district to bring the suit; and, in such a case, the same privilege might for the same reason be extended to the state; but nothing of that kind is pretended in this case. . . .

**Doucet**, 14 So.2d at 625.

Having discerned a general rule that the Attorney General lacks authority to file suit for a cause of action more properly brought by a governmental entity with the capacity to sue and be sued, the viability of this general rule must be determined. Over the course of many decades, this court has left intact these seminal rulings, with the occasion only to apply the general rule and the consequences that flow from it, not the exception. For example, citing *inter alia* **Tensas Delta Land Co.**, in **State, Dep't of Highways v. City of Pineville**, 403 So.2d 49, 52 (La. 1981), the court found, as a consequence of the general rule, that:

> the "State," for the purposes of the constitutional immunity from prescription, does not include a state agency which is a body corporate with the power to sue and be sued and which, when vested with a cause of action, is the sole party capable of asserting it. Regardless of its status as an instrumentality of the state, such an agency remains a distinct legal entity subject to claims of prescription except where the law provides otherwise.

Also recognizing the continued viability of the rulings in **Doucet**, **Allen**, and **Tensas Delta Land Co.**, it was necessary to distinguish those cases in **State ex rel. Guste v. Simoni, Heck & Associates**, 331 So.2d 478, 482 (La. 1976), as follows: "The present situation is distinguishable from those [cases] therein concerned, if only in that here, not only the state agency, but the state itself (as ultimate owner of the building), has

16

a cause of action arising out of defective construction of a building for it by a state agency."

Two reasons compel the conclusion that the general rule remains viable today. First, although the rule was most recently found applicable under the Louisiana Constitution of 1921, the relevant wording was streamlined in the present Constitution of 1974, but remains substantially unchanged:

> The Attorney General … shall attend to, and have charge of all legal matters in which the State has an interest, or to which the State is a party, with power and authority to institute and prosecute or to intervene in any and all suits or other proceedings, civil or criminal, as they may deem necessary for the assertion or protection of the rights and interests of the State.

La. Const. 1921 art. VII, § 56.

> As necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding … .

La. Const. 1974 art. IV, § 8.

Indeed, as recounted by the coordinator of legal research for the Constitutional Convention of 1973, there was no substantive change intended for the Attorney General's powers in civil cases between the Constitution of 1974 and the Constitution of 1921:

> Article IV, Section 8, … continues provisions for an attorney general elected statewide for a four-year term. Little dispute arose over the provision making him "the chief legal officer of the state" and continuing his powers in civil matters, but much controversy was generated by proposals establishing his powers in criminal matters … . [Emphasis added; footnote ommitted.]

Lee Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La. L. Rev. 765, 831 (Spring 1977). A second reason for upholding our longstanding jurisprudential interpretation of the constitutional powers of the Attorney General, after the enactment of the present constitution, is found in this explanation:

> [C]onsistent with another of our well-settled rules of interpretation, we presume that the legislature was aware of the interpretation that had been given to the constitutional provisions by the jurisprudence. **State, Department of Public Safety and Corrections, Office of State Police, Riverboat Gaming Division v. Louisiana Riverboat Gaming Commission and Horseshoe Entertainment**, 94-1872, 94-1914, p. 17 (La.5/22/95), 655 So.2d 292, 301 n.10 (reciting the rule that those who enact laws are presumed to act deliberately and with full knowledge of existing laws on the same subject, with awareness of court cases and well-established principles of construction, and with knowledge of the effect of their acts and a purpose in view).

**Fruge v. Bd. of Trustees of Louisiana State Employees' Ret. Sys.**, 08-1270, p. 18 (La. 12/2/08), 6 So.3d 124, 136. As in **Fruge**, the lack of an intended change in meaning of the text justifies applying in the present day this court's jurisprudence interpreting an earlier constitutional provision. See *id.*, 08-1270 at 19, 6 So.3d at 136. "Although we are bound by the words of the statutes and the constitution, as we have noted, once this court has ruled on an issue, we should be extremely reluctant to change our position, as both the legislature and society should be able to rely on the finality of our pronouncements. Stability and predictability in the law demand such a result." *Id.*, 08-1270 at 20, 6 So.3d at 137.

Having found the longstanding interpretation of the Attorney General's constitutional authority remains viable, its application in the instant case is addressed. The general rule provides that where, as here, a governmental entity has the capacity to sue and be sued, the Attorney General has no right of action. That does not, however, end the inquiry. To all general rules there may be exceptions. The jurisprudence on the powers of the Attorney General relative to governmental entities with the capacity to sue and be sued has provided examples of exceptions to the general rule. "[N]eglect or refus[al] to institute suit" by a governmental entity statutorily authorized to bring suit are two examples that may justify the Attorney General having a right of action that otherwise would solely belong to the

governmental entity.  See **Doucet**, 14 So.2d at 625.  In the record here, there are no allegations of neglect or refusal on the part of LDH to file suit against Unisys.  Again, the inquiry is not at an end because the jurisprudence placed "neglect or refusal" as merely two examples within the category of "highly exceptional circumstances" that may justify the Attorney General having a right of action.  See **Doucet**, 14 So.2d at 625 (quoting **Tensas Delta Land Co.**, 52 So. at 221).

The state has pleaded "highly exceptional circumstances" in the present case. A *de novo* review reveals the Attorney General's petition is replete with allegations of Unisys playing an essential role in the administration of Louisiana's Medicaid program and allegations of the state maintaining an interest in the contract with Unisys through ongoing legislative oversight.  A relatively small sampling from the state's twenty-page petition suffices:

> 1. For the last several decades, the Defendants have operated as the State's fiscal intermediary and processed payments for millions of Medicaid prescription drug claims each year.  ...
>
> . . . .
>
> 7. … The Molina Defendants have engaged in the business of operating, maintaining, implementing and managing the Louisiana Medicaid Management Information System ("LMMIS") since at least May of 2010 … .
>
> 8. … Unisys Corporation has engaged in the business of operating, maintaining, implementing and managing the LMMIS since at least January of 1984.  …
>
> . . . .
>
> 10. … Additionally, the Defendants play and/or played an important role in educating providers enrolled in Louisiana Medicaid.
>
> . . . .
>
> 18. … Defendants assumed operational liability of the LMMIS for the Louisiana Medicaid program in return for substantial payment from the State.

19. The LMMIS is the core tool used to administer the State's Medicaid reimbursement payments … . The Defendants' role, as the State's fiscal agent for the processing of Medicaid reimbursements, is to assist the State in meeting its healthcare administration goals, including reducing costs by adapting the LMMIS to the current realities and changes within Medicaid, including legally required changes.

20. At all times relevant to this action, the Defendants were contractually obligated to create and implement design changes to the LMMIS in accordance with Louisiana's statutory and administrative formulas that comply with State and federal mandates. ...

. . . .

26. [T]he State requested that the Defendants change the computer program and/or parameters the Defendants used to process reimbursements for prescription drugs to reflect the most recent reimbursement formula. ...

27. At all times relevant to this action, the Defendants were contractually and legally responsible for creating, designing, and implementing all of the above reimbursement formula changes to the LMMIS that comply with State and federal mandates, in order to accurately process Louisiana Medicaid's pharmacy provider claims for reimbursement in accordance with Louisiana's statutory and administrative formulas. ...

. . . .

29. The State's contract with the Defendants expressly incorporated the terms of the State's Solicitation for Proposal ("SFP"). As part of the contract, the Defendants warranted that they would comply "with all requirements of the SFP and all State and Federal regulations as they exist at the time of the Contract and as subsequently amended." …

30. ... The SFP explains that:

> ... LMMIS is operated in accordance with applicable State and Federal policies as they relate to the editing and payment of Medicaid claims. As a result, it is important that the reference files are **promptly and accurately updated to reflect approved changes and policies**.

...

. . . .

20

32. … The Defendants are further required to "maintain full, current and detailed knowledge of published Federal and State legislation, regulations, and guidelines pertinent to discharging [the Defendants'] responsibilities as the fiscal intermediary."

As reflected in these quoted allegations, Unisys was required to monitor and to adjust LMMIS not only to LDH's and the federal government's regulations, but also to the state's legislative oversight. It is virtually impossible to set forth precise guidelines for when the Attorney General has pleaded "highly exceptional circumstances" sufficient to state a right of action when another governmental entity has capacity to sue and be sued regarding a contract. This is necessarily a case-by-case determination. That said, where, as here, the causes of action are premised on a contract to perform governmental functions, the more the petition reflects that the state remains involved in the contract by providing ongoing legislative oversight, the more likely "highly exceptional circumstances" may be found.

This approach of evaluating a petition's allegations of ongoing legislative oversight as a measure of "highly exceptional circumstances" is consistent with this court's seminal decision in **Tensas Delta Land Co**. The **Tensas Delta Land Co.** court recognized the legislature exerted a baseline control over all state corporations, inasmuch as the legislature "made them, and can at any time abolish" state corporations, but nevertheless recognized the exception for the attorney general to have a right of action under "highly exceptional circumstances." **Id.**, 52 So. at 221. Therefore, drawing from **Tensas Delta Land Co.**, this court finds "highly exceptional circumstances" cannot arise from the baseline ability of the legislature to create or abolish certain governmental entities. Nor does this court find here "highly exceptional circumstances" arise from routine legislative oversight, which may said to exist from the legislature's statutory framework in effect at the time a contract is

21

confected. Rather, the petition's allegations that a contractor must observe and conform to a broad, yet often-changing legislative landscape, here rise to the level of "highly exceptional circumstances" sufficient to justify the Attorney General having a right of action.

Unisys, in its brief, contends that allowing the Attorney General to have a right of action on the strength of the allegations in the petition would essentially condone "the Attorney General's … unwarranted attempt to grab power rightfully belonging solely to LDH." We do not subscribe to this cynical view, but nothing in this opinion should be construed as giving the Attorney General or his representatives carte blanche to withstand an exception of no right of action by manufacturing highly exceptional claims in future cases. Indeed, our holding here that the state has pleaded "highly exceptional circumstances" greatly rests on a finding that the state's allegations of Unisys' activities are allegations that are recognizable–on their face–as activities integral to governmental functions. See La. C.C.P. art. 931 ("evidence may be introduced to support or controvert" an exception of no right of action, only "when the grounds thereof do not appear from the petition"). That said, but without expressing any opinion whatsoever on the merits of the allegations regarding Unisys' involvement in Louisiana's Medicaid program, it is a straightforward matter to compare the petition's allegations to governmental functions described by state and federal law. "As required by federal law, *see* 42 C.F.R. § 431.10, Louisiana law vests LDH as the sole agency authorized by law to administer the State's Medicaid program. *See* La. R.S. 36:254(A)(6)(a) and (D)(1)(a)(i)." Indeed, these citations of governmental functions have been quoted directly from Unisys' brief to this court, and apply to the allegations of the petition. Significantly, for this court's finding that "highly exceptional circumstances" bring this matter within the Attorney General's

purview, the governmental functions described in the petition are highly regulated not only by Louisiana law but also by federal law.

As grounds for granting Unisys' exception of no right of action, the court below relied on its earlier decision in **Abbott Laboratories Inc.**. However, **Abbott Laboratories, Inc.** is distinguishable because there the state asserted causes of action based on the allegation that "pharmaceutical manufacturers, distributors, marketers, and sellers … had engaged in an unlawful and deceptive scheme to <u>receive</u> Medicaid payments for drugs that were not eligible for Medicaid payments." **Abbott Laboratories Inc.**, 15-1626 at 3-4, 208 So.3d at 386 (emphasis added). Here, in contrast, the state alleges Unisys was responsible in its role as the state's "fiscal intermediary" in the Medicaid program for improperly <u>paying</u> for drug reimbursement claims.

Notably, the parties have presented, at great length, their vastly divergent views on the extent to which the state, as distinct from LDH, is a party to the LMMIS contracts. It is unnecessary for this court to resolve that dispute to ascertain that the state through the Attorney General has a right of action, given the allegations of Unisys' involvement with governmental functions. Therefore, this court expresses no view on whether the state is, itself, a party to the contract and, likewise, expresses no view on the related argument brought by the Attorney General that the use of state general funds justifies the state having a right of action.

**CONCLUSION**

LDH has the statutorily-conferred capacity to sue and be sued. <u>See</u> La. R.S. 36:251(A). The Attorney General is constitutionally authorized "[a]s necessary" to bring civil lawsuits on behalf of the state. <u>See</u> La. Const. 1974 art. IV, § 8. Prior jurisprudence of this court, formulated under earlier state constitutions with language

23

substantively retained in the current constitution, holds that in such a situation, as a general rule, only the governmental agency with the capacity to sue and be sued has a right of action. An exception to that general rule exists for "highly exceptional circumstances."

Our jurisprudential general rule and its exception remain viable under today's constitutional terminology authorizing the Attorney General to file suits "[a]s necessary." La. Const. 1974 art. IV, § 8. Stated simply, given that LDH is statutorily authorized to sue and be sued, it only becomes "necessary" for the Attorney General to file suit–relating to programs for which LDH could file the lawsuit–under "highly exceptional circumstances." Based on the pleadings, such circumstances have been identified in this case. Specifically, the Attorney General on behalf of the state has a right of action to bring a lawsuit against a private entity that has allegedly contracted to perform governmental functions essential to a program governed by both state and federal law where performance of the contract is subject to ongoing legislative oversight.

The contrary decision of the appellate court is hereby vacated, and this matter is remanded to the district court for further proceedings consistent with this opinion.

**VACATED; REMANDED.**

SUPREME COURT OF LOUISIANA

No. 2018-CC-1768

THE STATE OF LOUISIANA, EX REL. JAMES D. "BUDDY"
CALDWELL, ATTORNEY GENERAL

VERSUS

MOLINA HEALTHCARE,
INC; MOLINA INFORMATION SYSTEMS, L.L.C. D/B/A MOLINA
MEDICAID SOLUTIONS; PARAMAX SYSTEMS CORPORATION; AND
UNISYS CORPORATION

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST
CIRCUIT, PARISH OF EAST BATON ROUGE

**JOHNSON, Chief Justice, additionally concurs and assigns reasons.**

I agree with the majority that the Attorney General has a right to prosecute this lawsuit, but I find the majority opinion is too narrowly drawn.

In my view, the fact that LDH has a right of action does not preclude the state from also having a right of action. Although LDH is statutorily defined as "a body corporate with the power to sue and be sued" by La. R.S. 36:251, La. Const. art. IV, § 8 gives the Attorney General the power to institute a civil action "as necessary for the assertion or protection of any right or interest of the state." LDH is an agency of the state, authorized to act on behalf of the state to carry out certain duties. LDH is the state agency contracted to administer the Medicaid program. However, the state has not abdicated its power to bring a claim to protect the state's interests in this case. It is clear the state is the real party in interest under the contract. It is the state that suffers damages if the contract is breached and funds are misspent, as the state is the source of funding and the party responsible to the federal government for federal funds. I find no authority to give LDH the sole right to judicially pursue the claims alleged in the petition. Unquestionably, the state has the right to recover

1

overpayments of the state's money and federal money for which the state has fiscal liability.  Thus, the court of appeal opinion is properly vacated.

05/08/19

**SUPREME COURT OF LOUISIANA**

**No. 2018-CC-1768**

**THE STATE OF LOUISIANA, EX REL. JAMES D. "BUDDY" CALDWELL, ATTORNEY GENERAL**

**VERSUS**

**MOLINA HEALTHCARE, INC; MOLINA INFORMATION SYSTEMS, L.L.C. D/B/A MOLINA MEDICAID SOLUTIONS; PARAMAX SYSTEMS CORPORATION; AND UNISYS CORPORATION**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF EAST BATON ROUGE**

 

**GUIDRY, J.,** additionally concurs for the reasons assigned by Chief Justice Johnson.

**SUPREME COURT OF LOUISIANA**

**No. 2018-CC-1768**

**THE STATE OF LOUISIANA, EX REL. JAMES D. "BUDDY" CALDWELL, ATTORNEY GENERAL**

**VERSUS**

**MOLINA HEALTHCARE, INC; MOLINA INFORMATION SYSTEMS, L.L.C. D/B/A MOLINA MEDICAID SOLUTIONS; PARAMAX SYSTEMS CORPORATION; AND UNISYS CORPORATION**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF EAST BATON ROUGE**

**GENOVESE, J.,** additionally concurs for the reasons assigned by Chief Justice Johnson.