STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 1455

CATHY DERBONNE

VERSUS

STATE POLICE COMMISSION

*Judgment Rendered:*     OCT 1 4 2020

* * * * * * * *

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C665201

The Honorable William A. Morvant, Judge Presiding

* * * * * * * *

Jill L. Craft                                   Counsel for Plaintiff/Appellant
W. Brett Conrad, Jr.                            Cathy Derbonne
Baton Rouge, Louisiana


Jeff Landry                                     Counsel for Defendant/Appellee
Attorney General                                Louisiana State Police Commission
Christine S. Keenan
Special Assistant Attorney General
Eric R. Miller
Baton Rouge, Louisiana


* * * * * * * *

BEFORE: McDONALD, THERIOT, AND CHUTZ, JJ.

**THERIOT, J.**

Cathy Derbonne appeals the August 14, 2019 judgment of the Nineteenth Judicial District Court granting the Louisiana State Police Commission's peremptory exception of no cause of action and dismissing with prejudice Derbonne's petition for damages and her supplemental, amending, and restated petition. For the following reasons, we vacate the August 14, 2019 judgment, render judgment finding that Cathy Derbonne's petition sets forth both a cause of action and a right of action, and remand this matter for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On January 9, 2018, Cathy Derbonne filed a petition, naming as defendant the State Police Commission ("the Commission"). In her petition, Derbonne alleged that she had been hired as the Executive Director of the Commission in 2009. Derbonne claimed that, in her capacity as Executive Director, she was responsible for oversight of the Commission, which included ensuring the Commission and its members abided by their obligations under the law. According to Derbonne, on December 18, 2015, she was notified that active classified members of the Louisiana State Police, through the Louisiana State Troopers Association ("LSTA"), were making political contributions and engaging in political activities, and that active members of the Commission were making political contributions, all in violation of La. Const. art. X, § 47.[1]

The petition alleged that, upon receipt of this information, Derbonne began an investigation of the prohibited activities of current, active, and classified members of the State Police Service and brought the matters to the attention of the Commission. Derbonne alleged that on January 13, 2016, Franklin Kyle III, Chairman of the Commission, sent an email to Derbonne advising that she was not

---

[1] La. Const. art. X, § 47 states in pertinent part that "[n]o member of the commission and no state police officer in the classified service shall participate or engage in political activity . . . [or] make or solicit contributions for any political party, faction, or candidate[.]"

2

to take any steps regarding the LSTA's political activities and, further, stating that the Commission had no jurisdiction over the LSTA, only its classified employees/members. The next day, Derbonne was advised that the Executive Director of the LSTA had been making political contributions in his name, but that he was reimbursed by the LSTA from dues collected from its members.

Derbonne further alleged that she subsequently reported the prohibited activities to multiple entities outside of the Commission. On March 7, 2016, Derbonne reported the improper illegal activities to the Louisiana Board of Ethics. On March 16, 2016, she forwarded a written report of her findings to the Governor and his counsel. She met with the Governor's counsel on March 28, 2016, and was advised that the Commission members who had committed the prohibited activities, as well as Chairman Kyle, would be given the opportunity to resign.

Derbonne's petition further alleged that, on March 29, 2016, Commission Member Freddie Pitcher resigned from the Commission. On April 14, 2016, Commission Chairman Kyle and Commission Member William Goldring resigned. Also on April 14, 2016, Derbonne listed the matter of prohibited political activities on the Commission's Agenda as an item to investigate and address. The members that resigned, including the Chairman of the Commission, were replaced by the Governor in a manner that Derbonne alleges was unlawful.

Derbonne alleged that, on June 24, 2016, at an LSTA convention held in Lafayette, Louisiana, Commission Member Thomas Doss stated that Derbonne had caused the resignation of three Commission members, that Derbonne was not following Commission rules and policy, that Derbonne had hired outside counsel without authorization, and that what was happening with the Commission and LSTA was Derbonne's fault and that she "had lost her mind." Derbonne was subsequently advised that Commission Member Doss had been "monitoring and

3

observing" her daily routine. Doss was elected as Commission Chairman on July 14, 2016.

On July 26, 2016, Commission Chairman Doss allegedly emailed Derbonne requesting that Derbonne initiate a rule process that would prevent her from having control over decisions and holding information, and proposing the creation of an Executive Committee which would perform the functions of Derbonne's position. Further, on August 11, 2016, the Commission allegedly attempted to reduce Derbonne's pay. Derbonne alleges that, during this same time frame, State Police Colonel Michael Edmonson and at least four of his top deputies had received unlawful and unauthorized pay increases. On September 13, 2016, she reported the matter of illegal pay to another outside entity, the Legislative Fiscal Office. On October 13, 2016, Derbonne allegedly notified the State Police and the Commission that the Commission had not received proper approval by the Governor to implement the newly proposed pay plan. Derbonne alleges that Commission Chairman Doss ignored her complaints and, in retaliation, distributed a proposed Commission Rule that would drastically change Derbonne's duties as Executive Director. Additionally, during a November 10, 2016 Commission meeting, Derbonne again alleged that the proposed pay increases were unlawful unless approved by the Louisiana legislature and the Commission.

On December 8, 2016, at a Commission meeting, Commission members allegedly requested that Derbonne create a position of Deputy Director in case her husband became ill or she "got in a car wreck on her way 'here' for a meeting," which Derbonne considered a threat. On January 7, 2017, Derbonne allegedly received an anonymous letter warning her that Commission Chairman Doss was leading a "secret charge" to have her removed as Executive Director, at the behest of upper command. On January 10, 2017, Derbonne received a pre-prepared Agenda with a letter addressed to her, stating that the Commission intended to

4

discuss her professional competence at the next Commission meeting, and an Agenda item of consideration regarding whether her employment should be continued or terminated.

Prior to the January 12, 2017 Commission meeting, a Commission member allegedly told Derbonne that the Commission had the necessary votes to fire her. At the meeting, where the local media was present, the Commission allegedly accused Derbonne of violating the law by lying to a legislative committee. Before reaching the Agenda items relating to Derbonne's continued employment, Commission Chairman Doss requested a recess. During the recess, members of the Commission allegedly pressured Derbonne to resign, reiterating that they had enough votes to fire her. Derbonne asserts that, having no reasonable alternative, she resigned, believing that she had engaged in activities protected under law, including the Louisiana Whistleblower Statute, La. R.S. 23:967.

As a result of the above, Derbonne alleged that she sustained damages which include, but are not limited to, lost pay and benefits, loss of earning capacity, humiliation and embarrassment, severe emotional distress, mental anguish, and all other damages that would be fully shown at trial of this matter.

On March 28, 2018, the Commission filed a peremptory exception of no cause of action. The Commission argued that Derbonne failed to allege material facts that are necessary to establish the essential elements of a claim under La. R.S. 23:967. Specifically, the Commission claimed that Derbonne's claim under La. R.S. 23:967 should be dismissed because Derbonne failed to plead that (1) her employer, the Commission, actually violated state law; (2) she expressly advised the Commission that it violated state law; (3) she engaged in protected activity under La. R.S. 23:967; and (4) a causal connection existed between her alleged whistleblowing and her resignation.

A hearing on the Commission's exception of no cause of action was conducted on February 11, 2019. In a judgment signed on March 11, 2019, the trial court granted the Commission's exception of no cause of action. The judgment further ordered Derbonne to amend her pleadings within thirty days from the date that the ruling was rendered in open court.

On March 12, 2019, Derbonne filed a supplemental, amending, and restated petition. This amendment provided additional information regarding the responsibilities of the Commission, including Derbonne's assertions that the Commission has a duty to investigate allegations of misconduct, hold hearings, and render orders when violations of its rules occur. Derbonne asserted that the Commission deliberately, and in violation of the Louisiana Constitution, Commission rules, and Louisiana law, failed to take any action against its members for their alleged illegal actions, and instead "took reprisal against [Derbonne], including threatening her job, accusing her of false violations of law, removing her job duties, cutting her pay, and constructively discharging her[.]" The amended petition also alleged that, on July 29, 2016, the Commission, through Commission Chairman Doss, falsely accused Derbonne of violating Commission rules by providing a copy of the Louisiana State Police Policy and Procedures to the media. Derbonne alleged that these accusations were made in reprisal for her complaints and opposition to the Commission's violations of law. Additionally, Derbonne alleged that on May 14, 2017, the Commission was aware and/or had hired a private investigator to follow her and report all of her activities, including her personal activities, because of her actions.

On April 11, 2019, the Commission filed another peremptory exception of no cause of action, this time with respect to Derbonne's supplemental, amending, and restated petition. The Commission again asserted that Derbonne failed to plead sufficient facts to establish that her employer, the Commission, had engaged

6

in a workplace act or practice that resulted in an actual violation of state law. The Commission further argued that Derbonne admitted that it was her responsibility as Executive Director of the Commission to ensure that the Commission and its members "abided by their obligations under the law" and that, consequently, Derbonne cannot now claim whistleblower protection for those alleged acts of non-compliance that fell within her responsibility to report and correct.

A hearing on the Commission's second exception of no cause of action was held on July 29, 2019. On August 14, 2019, the trial court signed a judgment stating that:

> After considering the pleadings, memoranda, argument of counsel, and the law, and for reasons orally assigned, the Court overruled the Exception of No Cause of Action as to whether the Plaintiff sufficiently [pleaded] a cause of action under La. R.S. 23:967 but sustained the Exception of No Cause of Action that the Plaintiff did not qualify as a whistleblower within the meaning of La. R.S. 23:967.
>
> IT IS HEREBY ORDERED that Defendant's Exception of No Cause of Action is GRANTED and Plaintiff's Petition for Damages and Supplemental, Amending, and Restated Petition are DISMISSED WITH PREJUDICE at plaintiff's cost.

In oral reasons, the trial court stated that Derbonne's original petition failed to allege that her employer, the Commission, had committed any specific violations of state law. The trial court acknowledged that Derbonne had alleged that members of the Commission had given improper contributions; that the LSTA had acted improperly; that Colonel Edmonson had made some improper promotions and pay raises; and that the Governor had made some improper appointments to the Commission. However, the trial court noted that none of the above were Derbonne's employers.

Regarding the amended petition, the trial court stated that Derbonne's amendments alleged that she had made these reports to her employer and that the employer had failed to respond to those reports. The trial court further stated:

7

And I understand the argument of the Commission, is that . . . there's a discretionary element to it. And as I look at the element of discretion, is that, they may undertake an investigation. They're not obligated to do that. But I would think that once they undertake that investigation and a violation is discovered, I don't think that discretion then applies and says, well, we may or may not pursue that. I think, for the purposes of the exception of no cause of action, the amended petition, as to at least the violation, states a cause of action.

The trial court then referenced *Matthews v. Military Dept. ex rel. State*, 2007-1337 (La. App. 1 Cir. 9/24/07); 970 So.2d 1089, 1089-90 (per curiam), *writ denied*, 2007-2316 (La. 2/15/08); 976 So.3d 177, *cert. denied*, 555 U.S. 818, 129 S.Ct. 82, 172 L.Ed.2d 29 (2008), in which this court found in pertinent part that the plaintiff was afforded no protection under La. R.S. 23:967 for his reports relative to the State of Louisiana's potential liability for the acquisition of a disease center, because those reports were required as part of the plaintiff's normal duties. The trial court found, based on *Matthews*, that because Derbonne's actions fell within her normal job duties, those actions are not protected under La. R.S. 23:967.

This appeal followed.

## ASSIGNMENTS OF ERROR

Derbonne assigns the following as error:

(1) Louisiana Revised Statutes 23:967, Louisiana's anti-reprisal statute, does not exclude protests, reports, and oppositions to violations of the law by employees simply because his/her job may require such reporting. For example, Louisiana requires its employees to report sexual harassment, but if the trial court's opinion in this instance stands, then no state employee could ever sue under La. R.S. 23:967 even if he/she, like Ms. Derbonne, was a whistleblower.

(2) The plain language of La. R.S. 23:967 clearly envisions that employees protest, report, and oppose actual violations of law. Therefore, it is inconsistent with the statute's command to exclude employees who do so.

## STANDARD OF REVIEW

The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. The burden of demonstrating that the petition states

8

no cause of action is upon the mover. Peremptory exceptions raising the objection of no cause of action present legal questions, which are reviewed using the *de novo* standard of review. The court reviews the petition and accepts well-pleaded allegations of fact as true. *Reyer v. Milton Homes, LLC*, 2018-0580 (La. App. 1 Cir. 2/25/19); 272 So.3d 604, 607. No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. La. Code Civ. P. art. 931; *Reyer*, 272 So.3d at 607.

An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim that would entitle him to relief. If the petition states a cause of action on any ground or portion of the demand, the exception should generally be overruled. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity to present evidence at trial. *Badeaux v. Southwest Computer Bureau, Inc.*, 2005-0612 (La. 3/17/06); 929 So.2d 1211, 1217.

## DISCUSSION

In two related assignments of error, Derbonne argues that La. R.S. 23:967 does not exclude protests, reports, and oppositions to violations of law by employees simply because the employee's job may require such reporting. Derbonne further argues that the plain language of La. R.S. 23:967 clearly envisions that employees protest, report, and oppose actual violations of law; thus, excluding employees who do so would be inconsistent with the statute's command.

The Commission argues that by her own admission, Derbonne was responsible for the day to day administration of the Commission, including oversight of the Commission and ensuring that the Commission and its members abided by their obligations under the law. The Commission argues that, pursuant to this court's precedent in *Matthews*, 970 So.2d at 1090, Derbonne is not entitled

9

to protection under La. R.S. 23:967. Instead, the Commission argues that the whistleblower protection of La. R.S. 23:967 is intended for those employees who report unlawful conduct when it is not within their regular job duties to do so.

Derbonne's Cause of Action

As a preliminary matter, we note that the Commission's peremptory exception of no cause of action as to Derbonne's supplemental, amending, and restated petition should have been filed as a peremptory exception of no right of action. Although the two exceptions are often confused, the peremptory exceptions of no right of action and no cause of action are separate and distinct. La. Code Civ. P. art. 927(A)(5) and (6); *State, by and through Caldwell v. Astra Zeneca AB*, 2016-1073 (La. App. 1 Cir. 4/11/18); 249 So.3d 38, 42, *writs denied*, 2018-00766, 2018-0758 (La. 9/21/18); 252 So.3d 899, 904. The function of the exception of no right of action is a determination of whether plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition. La. Code Civ. P. art. 927(A)(6); *Caldwell*, 249 So.3d at 42. The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. The court reviews the petition and accepts well-pleaded allegations of fact as true. *Reyer*, 272 So.3d at 607.

The Commission argues that Derbonne is not a whistleblower within the meaning of La. R.S. 23:967 because her normal job duties as Executive Director of the Commission required her to routinely investigate and report matters that violated the Commission's rules. In other words, the Commission is arguing that Derbonne does not belong to the class of persons to whom the law grants the cause of action asserted in the petition. *See Caldwell*, 249 So.3d at 42. Thus, the Commission's argument is more properly asserted as an exception of no right of

10

action.[2] Because the objection of no right of action may be noticed by either the trial court or appellate court on its own motion, the merits of the exception are properly before us. *See* La. Code Civ. P. arts. 927, 2163; *State ex rel. Caldwell v. Molina Healthcare, Inc.*, 2018-1768 (La. 5/18/19); 283 So.3d 472, 477. However, we first address whether Derbonne's supplemental, amending, and restated petition sets forth a cause of action under La. R.S. 23:967.

The Louisiana Whistleblower Statute, La. R.S. 23:967, as enacted in Acts 1997, No. 1104, § 1, provides in pertinent part:

A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:

(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.

(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.

(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.

C. For the purposes of this Section, the following terms shall have the definitions ascribed below:

(1) "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such.

(2) "Damages" include compensatory damages, back pay, benefits, reinstatement, reasonable attorney fees, and court costs resulting from the reprisal.

---

[2] It appears that the trial court reached a similar conclusion as to whether a right of action, not a cause of action, was sufficiently pled. In the August 14, 2019 judgment, the trial court overruled the Commission's exception of no cause of action as to whether Derbonne sufficiently pled a cause of action under La. R.S. 23:967, but sustained the exception of no cause of action because it found that Derbonne did not qualify as a whistleblower within the meaning of La. R.S. 23:967.

The Louisiana Whistleblower Statute protects employees against reprisal from employers for reporting or refusing to participate in illegal work practices. The statute targets serious employer conduct that violates the law. *Causey v. Winn-Dixie Logistics, Inc.*, 2015-0813 (La. App. 1 Cir. 12/23/15); 186 So.3d 185, 187, *writ not considered*, 2016-0167 (La. 3/24/16); 190 So.3d 1187. The plaintiff must establish an actual violation of state law under the Louisiana Whistleblower Statute in order to prevail on the merits of the case. *Accardo v. Louisiana Health Services & Indem. Co.*, 2005-2377 (La. App. 1 Cir. 6/21/06); 943 So.2d 381, 386. A violation of La. R.S. 23:967 occurs if (1) the employer violated Louisiana law through a prohibited workplace practice; (2) the plaintiff advised the employer of the violation; (3) the plaintiff threatened to disclose or disclosed the prohibited practice; and (4) the plaintiff experienced a reprisal as a result of the threat to disclose or because of the disclosure of the prohibited practice. *Dobyns v. University of Louisiana System*, 2018-0811 (La. App. 1 Cir. 4/12/19); 275 So.3d 911, 926, *writ denied*, 2019-00950 (La. 9/24/19); 278 So.3d 977.

Regarding the first element required to show that an employer violated La. R.S. 23:967, Derbonne's supplemental, amending, and restated petition sets forth allegations that the Commission, her employer, "violate[d] the Louisiana Constitution, its own rules, and the law" and lists several constitutional provisions and Commission rules that the Commission purportedly violated. As to the second element, Derbonne alleges that, after learning that multiple Commission members had engaged in prohibited political activities, she began an investigation into these activities and brought the matter to the attention of the Commission. In response, Commission Chairman Kyle allegedly told Derbonne not to take any steps regarding the political activities of the Commission members. Regarding the third element, Derbonne alleges that she eventually reported the improper political

activities to the Louisiana Board of Ethics, the Commission, and the Governor and his counsel. Derbonne asserts that even after making her reports, she continued to oppose the Commission's conduct. Finally, as to the fourth element, Derbonne allegedly experienced various forms of retaliation, including eventually being pressured to resign from her job. Accordingly, Derbonne's supplemental, amended, and restated petition sets forth a cause of action pursuant to La. R.S. 23:967. *See Dobyns*, 275 So.3d at 926.

Derbonne's Right of Action

As previously stated, the trial court found that Derbonne did not qualify as a whistleblower within the meaning of La. R.S. 23:967. The trial court's findings were based on *Matthews*, 970 So.2d 1089, 1090, which held that a public employee was afforded no protection under La. R.S. 23:967 for his reports relative to the State's potential liability for the acquisition of a disease center insofar as those reports were required as part of his normal job duties.

We do not know all of the particular facts involved in *Matthews*, 970 So.2d 1089. The short discussion in the writ decision states that plaintiff made "reports relative to the State's potential liability for acquisition of the Gillis Long Hansen Disease Center[.]" The writ decision further states that "plaintiff's allegations relative to the Gillis Long Hansen Disease Center indicate that plaintiff was merely expressing his concerns about the State's potential liability in acquiring same, which concerns do not amount to whistleblowing." *Matthews*, 970 So.2d at 1090. Additionally, the writ points out that, regarding the applicability of La. R.S. 30:2027, Louisiana's Environmental Whistleblower Statute, the plaintiff did not "allege that he attempted to disclose or threatened to disclose State activity relative to the acquisition of the Gillis Long Hansen Disease Center that he reasonably believed to be in violation of an environmental law, rule, or regulation." *Matthews*, 970 So.2d at 1090. Thus, from the limited facts provided in *Matthews*,

13

in which the plaintiff did not allege that he attempted to disclose or threatened to disclose any illegal activity, it appears that the case before us is distinguishable. Accordingly, *Matthews* is not binding on this court, and there is no reason to overrule, modify, or amend the writ panel's decision.[3]

The Commission cites *Stone v. Entergy Services, Inc.*, 2008-0651 (La. App. 4 Cir. 2/4/09); 9 So.3d 193, 200, *writ denied*, 2009-0511 (La. 4/17/09); 6 So.3d 797, for the proposition that an employee who reports a potential violation of the law, when such reporting is part of that employee's normal job responsibilities, is not protected as a whistleblower. *Stone* involved La. R.S. 30:2027, Louisiana's Environmental Whistleblower Statute, not La. R.S. 23:967, and cites no authority for its holding. Even if *Stone* did address La. R.S. 23:967, the opinion of other circuit courts are not authoritative or binding on this court. *Great Lakes Dredge & Dock Co., LLC v. State ex rel. Coastal Protection and Restoration Authority*, 2014-0249 (La. App. 1 Cir. 11/7/14); 167 So.3d 682, 689 n.7.

Louisiana's application of the job duties exclusion is discussed by Professor Nancy M. Modesitt in her article *The Garcetti Virus*.[4] Modesitt points out that neither *Matthews* nor *Stone* assess the language of their respective whistleblower

---

[3] We further note that the relevant conclusion in *Matthews* is not based on any Louisiana jurisprudence, but instead cites to *Sasse v. U.S. Dept. of Labor*, 409 F.3d 773, 779-80 (6th Cir. 2005), a Sixth Circuit case involving an employee's whistleblower claims brought under the Clean Air Act, the Solid Waste Disposal Act, and the Federal Water Pollution Control Act, all of which are federal statutes. *Sasse* applied the job duties exclusion that appeared in various other federal decisions, and which provides that employees whose job duties require that they report unlawful behavior were not protected as whistleblowers. *See Huffman v. Office of Personnel Management*, 263 F.3d 1341, 1352 (Fed. Cir. 2001); *Willis v. Department of Agriculture*, 141 F.3d 1139, 1144 (Fed. Cir. 1998). It appears that *Willis, Huffman* and *Sasse* have been statutorily overruled. In 2012, the Whistleblower Protection Act ("WPA") was amended to clarify that disclosures made in the normal course of an employee's job duties are protected. *See, e.g, Acha v. Department of Agriculture*, 841 F.3d 878, 880-81 (10th Cir. 2016) (noting that *Huffman's* holding that an employee who makes disclosures as part of his normal duties is not a protected whistleblower has been superseded by statute, *Whistleblower Protection Enhancement Act of 2012*, Pub. L. No. 112–199, 126 Stat. 1465; *Rohner v. Atkinson*, 118 A.3d 486, 491-92 (Pa. Cmwlth 2015) ("In 2012, Congress amended the federal law to provide that all reports of wrongdoing, whether or not made in the course of employment, were protected. Effectively, this amendment overruled *Huffman*."); *Balko v. Ukrainian National Federal Credit Union*, No. 13 Civ. 1333 (LAK) (AJP), 2014 WL 1377580, at *18-19 (S.D.N.Y. Mar. 28, 2014), *report and recommendation adopted sub. nom. Balko v. Ukrainian National Federal Credit Union*, No. 13 Civ. 1333 (LAK) 2014 WL 12543813 (S.D.N.Y. June 10, 2014) ("In 2012, however, Congress overruled the reasoning of [*Willis, Huffman*, and *Sasse*] by adding subsection (f) to the WPA, which states that an employee is not excluded from whistleblower protection simply because her 'disclosure is made during the normal course of duties.' 5 U.S.C. § 2302(f)(2)"; *see also, e.g., Leshinsky v. Telvent GIT, S.A.*, 942 F.Supp.2d 432, 449 (S.D.N.Y. May 1, 2013) ("In rejecting the Federal Circuit's narrow reading of the WPA, Congress made crystal clear its intent that *any* whistleblower who reports misconduct via one of the enumerated channels be protected under federal whistleblower statutes.").

[4] The reference arises from *Garcetti v. Ceballos*, 126 S.Ct. 1951, 547 U.S. 410, 164 L.Ed.2d 689 (2006), wherein the Court applied the job duties exclusion to a claim brought under the First Amendment.

statutes or provide any rationale for adopting the job duties exclusion. Nancy M. Modesitt, *The Garcetti Virus*, 80 U. Cin. L. Rev. 137, 173-74. Modesitt further notes that courts, including state courts, that have considered the job duties exclusion have failed to follow the normal process of statutory interpretation when deciding whether the exclusion applies. *Id.* at 167.

Accordingly, we now turn to La. R.S. 23:967. The interpretation of any statutory provision starts with the language of the statute itself. *Oubre v. Louisiana Citizens Fair Plan*, 2011-0097 (La. 12/16/11); 79 So.3d 987, 997. It is a well-established principle of statutory construction that, absent clear evidence of a contrary legislative intention, a statute should be interpreted according to its plain language. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ. Code art. 9; La. R.S. 1:4; *Cleco Evangeline, LLC v. Louisiana Tax Com'n*, 2001-2162 (La. 4/3/02); 813 So.2d 351, 354.

Words and phrases shall be read with their context and construed according to the common and approved usage of the language. La. R.S. 1:3. Further, every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. Consequently, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found. *Oubre*, 79 So.3d at 997.

The text of La. R.S. 23:967 does not state that whistleblower protection is only provided to those employees who report violations of the law when they are not required to do so. To the contrary, La. R.S. 23:967 uses the term "employee," which Black's Law Dictionary defines as "[s]omeone who works in the service of

15

another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." Black's Law Dictionary (11th ed. 2019). When interpreting the plain language of La. R.S. 23:967, the word "employee" encompasses any and all employees of the employer. The legislature clearly did not distinguish between those employees performing employment duties and those not performing such duties. Imposing such a rule would allow employers to retaliate against any employee whose job duties require that they report violations and would provide no recourse for employees in that circumstance. Whether reporting violations is one of an employee's responsibilities or not, an employee still risks retaliation if they engage in whistleblowing.

If, as stated in *Willis*, 141 F.3d at 1144, the purpose of whistleblowing laws is "to protect government employees who risk their own personal job security for the advancement of the public good by disclosing abuses by government personnel[,]" that protection should also apply to employees performing their job duties. *See also* Modesitt, 80 U. Cin. L. Rev. at 156 (Noting that "employees are likely to have the most accurate information about wrongdoing" but, because of the job duties exclusion, "are least likely to be protected if they disclose it"). It appears that the Louisiana legislature intended to protect whistleblowing employees, whether those employees were performing their job duties or not. Louisiana Revised Statutes 23:967(A)(1) protects an employee who "[d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law." If the legislature intended to distinguish between employees whose job duties included whistleblowing from employees whose job duties did not include whistleblowing, it could have done so. The legislature did not make such a distinction, and neither should this court. Accordingly, interpreting La. R.S. 23:967 according to its plain language, we hold that an employee whose duties

16

require that they report violations of law is not precluded from filing suit under La. R.S. 23:967. Such an interpretation does not lead to absurd consequences. *See* La. Civ. Code art. 9; La. R.S. 1:4; *Cleco Evangeline, LLC*, 813 So.2d at 354. Derbonne alleges that she reported violations of law to the Commission, as well as to the Governor, the Legislative Fiscal Office, and the Louisiana Board of Ethics. Therefore, we find that Derbonne has stated a right of action under La. R.S. 23:967.

## DECREE

For the above and foregoing reasons, we vacate the August 14, 2019 judgment of the trial court granting the State Police Commission's peremptory exception of no cause of action and dismissing with prejudice Cathy Derbonne's petition for damages and her supplemental, amending, and restated petition. We render judgment finding that Cathy Derbonne's petition states both a cause of action and a right of action. This matter is remanded for further proceedings consistent with this opinion. Costs in the amount of $1,779.00 are assessed to Appellee, the State Police Commission.

**VACATED, RENDERED, AND REMANDED.**